# United States Court of Appeals
## For the First Circuit

No. 01-1579

UNITED STATES OF AMERICA,

Appellee,

v.

ALBERT TAYLOR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ernest C. Torres, U.S. District Judge]

Before

Boudin, Chief Judge,

Lynch, Circuit Judge,

and Gertner,* District Judge.

Darla J. Mondou, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom
Margaret E. Curran, United States Attorney, and Zechariah Chafee,
Assistant United States Attorney, were on brief for appellee.

---

*Of the District of Massachusetts, sitting by designation.

**GERTNER, District Judge.** On January 9, 2001, defendant-appellant Albert Taylor ("Taylor") and his co-defendant Thomas Isaac Webb ("Webb") were found guilty of one count of conspiracy to distribute crack cocaine and two counts of knowingly distributing crack cocaine (in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1), respectively). Taylor was sentenced to 97 months in prison and five years of supervised release on each count, with the sentences to run concurrently.[1]

Taylor challenges a number of evidentiary rulings of the trial court, claiming that these rulings, individually and in combination, warranted a mistrial or reversal of his conviction. We conclude otherwise and affirm the district court's rulings.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

During a five day trial, the government sought to prove that Taylor and Webb engaged in a conspiracy to distribute crack cocaine and did so on two occasions, April 17, 1999, and April 22, 1999. The Government called several witnesses, including William Cossia ("Cossia"), a cooperating witness and the putative purchaser of the drugs. Cossia purchased crack cocaine from the defendants at the Blue

---

[1] This appeal was consolidated with the appeal of Taylor's co-defendant, Webb, but Webb's appeal was subsequently dismissed for want of prosecution.

Star Motel in Westerly, Rhode Island, while the Federal Bureau of Investigations ("FBI") recorded the transactions. The government introduced the tapes of the recorded conversations as well as the crack cocaine reportedly sold by Taylor and Webb during the two transactions.

### A.      Motion In Limine Hearing

Prior to trial, Taylor and Webb filed a motion in limine to exclude evidence of a prior Cossia-Taylor drug transaction under Fed. R. Evid. 403 ("Rule 403"). The motion sought to exclude "any evidence or testimony that the informant, William Cossia, had prior drug dealing activities with Albert Taylor." The motion noted that the challenged testimony was "highly prejudicial, irrelevant and would mislead the jury."[2] Specifically, Taylor sought to prevent Cossia from testifying about a November 1998 incident in North Stonington, Connecticut, six months before the two charged transactions, during which Cossia and a female friend met Taylor and Webb at a truck stop and purchased crack cocaine from them.

---

[2] The defendant filed a memorandum of law consisting of the following:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Federal Rules of Evidence 403.

-3-

The government countered that the testimony was important for several reasons: (a) to enable the jury to understand that Cossia did not contact Taylor out of the blue to set up the charged transactions; (b) to counteract the expected defense that Cossia incorrectly identified Taylor and Webb on those occasions; and (c) to establish a common scheme or plan under Fed. R. Evid. 404(b) ("Rule 404(b)").

Characterizing the motion as one raising "a difficult issue," the trial court concluded that because six months elapsed between the alleged prior sale and the April 17, 1999, transaction, the connection between the two incidents was too tenuous to show a "common scheme or plan" under Rule 404(b). The court expressed concerns about avoiding a mini-trial on the subject of the North Stonington incident, which would open up a "Pandora's Box of other issues." The court also found that the North Stonington evidence was not probative on the subject of Cossia's identification of Taylor and Webb because Cossia claimed to be able to identify the defendants on the basis of his face-to-face dealings with them on the two charged occasions. The court did, however, allow the government to establish that Cossia had met Taylor and Webb before the April 17, 1999, transaction, so long as it instructed Cossia not to explain the circumstances of their meeting.

The problem was that there were two sources of evidence concerning the North Stonington transaction -- Cossia's testimony and

a reference on the audiotape recordings (which the government was seeking to introduce) of the April 17, 1999, meeting. While the tape reference was mentioned during the motion in limine hearing, the focus of the court's order was directed to the Cossia testimony.[3] Neither the government nor defense counsel ever sought clarification from the court as to whether the court's order covered the audio taped reference to North Stonington as well as Cossia's testimony. The defendant, in particular, never objected to the North Stonington reference or sought its redaction from the tape-recorded conversation at any time.[4]

## B.    Cossia's Trial Testimony

During the course of Cossia's testimony at trial, the government did establish that Cossia had met Taylor and Webb prior to the April 17, 1999, crack cocaine deal.[5] Cossia, however, did not refer to the North Stonington incident.

---

[3] The court, for example, directed the government to caution Cossia prior to taking the stand not to refer to the prior incident.

[4] Counsel's omission is especially telling since the tapes were the subject of an independent motion in limine which was argued during the same motion hearing. Defense counsel sought to exclude the audiotapes due to the allegedly poor sound quality of the recordings. The court denied the motion after listening to the tapes.

[5] The government asked, "You mentioned earlier seeing them . . . do you recall how much earlier before April that occasion was that you saw them with the gold Probe?" Taylor objected. After the judge overruled the objection, Cossia responded, "Several months."

Cossia testified that he phoned Taylor on April 17, 1999, and placed an order for two "eight balls" (7 grams) of crack cocaine. A meeting was arranged at the Blue Star Motel for that evening. When Cossia arrived, he was wearing a tape recorder and wire transmitter.

The tape was played to the jury. In it, Cossia could be heard posing as a retail drug dealer with wealthy clients who demanded high quality crack cocaine. Cossia identified Taylor and Webb, who were also posturing. They boasted about dealing large quantities of drugs, larger than other dealers in the area. Taylor warned Cossia that he (Taylor) controlled all future transactions. He remarked, "We don't do what you say! You do what we say . . . ."

When Taylor expressed concern that Cossia might be working for the police, Cossia, in the portion of the audiotape whose introduction the defendant now challenges, sought to ease Taylor's concerns by reminding Taylor that they had met in North Stonington six months before. Although the reference was brief and the context not entirely clear, the dialogue does suggest that the earlier transaction involved a drug deal.[6] Cossia told Taylor that if Cossia was working

---

[6] On the audiotape, Cossia first states to Taylor, "You dealt with me before . . . I can tell you all the spots you dealt with me . . . . Did anything happen to you then?" And later Cossia says, "Over by BROOKS. Right there . . . . We did you again. We met you in North Stonington. Went down side road and came up. Shined a flashlight in my face. Now you fellas had to been together . . . now . . . if I'm the police why aren't you jammed?" Cossia explained to the jury that the definition of "spot" was a place where you can purchase cocaine

for the police, then Taylor surely would have been arrested at the time.  Cossia added, "We met you over North Stonington . . . if I'm the police why aren't you jammed?"  Defense counsel did not object at any time to the playing of this portion of the audiotape.

Taylor then went on to threaten Cossia:  "[W]hen the shit go wrong they'll know why it happened.  They get shot."  Cossia testified at trial that shortly after making the threat, Taylor leaned back in his chair and exposed the automatic handgun tucked in his waistband, calling Cossia's attention to it by patting it.  Taylor objected, but his objection was overruled.[7]

Webb then placed two eight balls of crack cocaine on the table.  After a brief dispute over their texture, Cossia accepted the drugs and handed Taylor $450 in cash that had been supplied to him by the FBI.  Meeting with the FBI as soon as he left the defendants,

---

or where individuals meet.

[7] The trial court told the jury:

> I'd just like to mention, ladies and gentlemen, there's no -- the Defendants are not charged with possessing a firearm or a gun.  The only bearing this would have on anything at all is whether it helps you in determining whether they're guilty with which they have been charged, which is conspiracy to deliver crack cocaine and delivery of crack cocaine.  Aside from that, this has no significance.

Cossia turned the drugs over to them.  The weight of the drugs was recorded at 6.44 grams of crack cocaine.

On April 22, 1999, Cossia phoned Taylor to set up a second meeting to purchase three eight balls (10.5 grams) of crack cocaine. After setting the price at $750, the two agreed to meet again at the Blue Star Motel.  Cossia again wore a wire transmitter and recording device.  At the meeting, Taylor and Webb exchanged cash for cocaine base, which Cossia turned over to the FBI.  The weight was determined subsequently to be 8.77 grams.

In addition to Cossia, law enforcement officers testified that they monitored Cossia's transmissions.  The government also presented  evidence which linked Taylor and Webb to a gold Ford Probe that was  parked outside the Blue Star Motel during the transactions.

During its closing argument, and specifically, in rebutting defense counsel's argument, the government briefly referred to the North Stonington incident mentioned in the audiotape of the April 17, 1999, transaction.  Defense counsel did not object.

On appeal, Taylor challenges the admission of the North Stonington reference on the April 17, 1999, tape and the fact that the court permitted Cossia to testify that Taylor had a gun in his waistband during the April 17, 1999, drug deal, to which he had objected.  In addition, Taylor challenges the prosecutor's reference to

the North Stonington incident in his closing and the court's failure to grant a mistrial sua sponte based on the collection of "errors."

II.    **LEGAL ANALYSIS**

A.    **Cossia's Taped Statement Concerning the North Stonington Incident**

Taylor concedes that he did not object to the admission of Cossia's taped statement concerning the North Stonington incident. Absent an objection to the evidence at trial, our review under Fed. R. Crim. P. 52(b) ("Rule 52(b)") is for plain error. United States v. Meserve, 271 F.3d 314, 324 (1st Cir. 2001). Taylor must prove "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Taylor's challenge to the North Stonington reference on the tape cannot meet this standard.

Taylor claims error of two sorts -- on the part of the government and on the part of the court. First, he claims that there was prosecutorial misconduct when the government sought to admit the reference to the North Stonington meeting as part of the April 17, 1999, tape. And second, he claims that the trial court erred because it did not sua sponte exclude or redact the portion of the tape containing this reference.

-9-

The admission of the North Stonington reference on the audiotape is neither prosecutor error nor court error, much less "plain error" on the part of either within the meaning of Rule 52(b). First, there is no basis to conclude that the government inappropriately tried to "slip in" references to the incident. The government had shared the tapes and the transcripts with the defense in advance of trial. Indeed, at the motion in limine hearing before the trial, the court listened to the audiotapes while reading the transcripts. The government even referred to Cossia's taped remark during the argument.

Second, it is not at all clear that the North Stonington references violated the court's in limine order. The scope of the court's order was ambiguous. While the defendant's motion was directed at "evidence or testimony," the court's oral remarks focused exclusively on Cossia's testimony: Cossia was permitted to testify generally about meeting the defendants on an earlier occasion, but not about specific prior bad acts. In fact, rather than deflecting blame on to the prosecutor or the court, responsibility for the admission of the unredacted tape rests at the feet of the defense counsel, who made no effort to clarify the scope of the court's order, flag the issue in advance of the hearing, or object contemporaneously to the tape's admission.

In any event, the admission of the unredacted tape is hardly error. If it had been brought to the court's attention, it would have

been within the court's discretion to exclude Cossia's direct testimony about the earlier transaction, but, at the same time, to allow the cursory reference to the transaction on the tape.  The two positions are not at all inconsistent with one another.  Cossia's testimony raised specific concerns about the admission of "prior bad act" testimony under Rule 404(b).[8]  Rule 404(a) codifies the basic principle that evidence of a person's character is not admissible for the purpose of proving that such person acted in conformity with that character on a particular occasion.  Rule 404(b) represents an extension of the principle to the admission of more specific -- and potentially more prejudicial -- evidence, namely "other crimes, wrongs, or acts."  Its purpose is to prevent the jury from inferring that because a person acted in a particular way on a specific occasion unconnected with the facts in the case at bar, the person is likely to have acted the same way with respect to the operative facts of the crime charged.  But evidence of "other crimes, wrongs, or acts" may be admissible where

_____

[8] Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).

offered to prove facts other than propensity, such as those listed in Rule 404(b) (e.g., common plan or scheme, motive, or intent).

The court below found that Cossia's testimony about the earlier incident was inappropriate propensity evidence because the connection between the earlier incident and the charged incident was tenuous. In addition, the Cossia testimony on this subject raised issues about judicial economy -- the specter of a mini-trial about what had occurred on that earlier date that was not in any way essential to Cossia's account of what had occurred on April 17, 1999, and April 22, 1999. Accordingly, the trial court precluded Cossia from testifying about the earlier incident.

The reference on the tape raised different issues and did not carry with it the same dangers. The reference was cursory. While it suggested a prior drug transaction, it did not go into details. It was introduced not for the purpose of showing propensity to commit a crime, but rather as part and parcel of an on-going conversation taking place during the crime itself. See United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994) (holding that Rule 404(b) is not applicable to evidence of crimes that are necessary to complete the story of the charged crime). Cossia sought to reassure Taylor that he was not law enforcement by referring to the prior encounter. Taylor, still worried, threatened Cossia that he might be shot if events proved

-12-

otherwise.[9] The framework for analyzing this testimony was not Rule 404(b) but Rule 403, in which the court balances the probative value of the evidence against its prejudice.[10]

Viewed through the prism of the plain error test, the admission of the unredacted transcript is well within the court's discretion. See United States v. Chin, 83 F.3d 83, 88 (4th Cir. 1996) (Rule 404(b) did not apply and Rule 403 was not offended where "[t]he statements regarding [a contract] murder were made during an exchange of heroin for cash," making the remarks concerning the contract murder "an intrinsic part of [the] drug deal and the witness' account of the context and circumstances surrounding the deal."). See generally United States v. Li, 206 F.3d 78, 84 (1st Cir.), cert. denied, 531 U.S.

---

[9] The problem with not having flagged the issue in advance is that once the tape was played, Taylor was on the horns of a dilemma. He could have asked for a limiting instruction -- that the jury should consider the taped remark only for the purpose of evaluating the conversation and not for criminal propensity -- but such an instruction would have also attracted the jury's attention to the reference. It was a dilemma of counsel's making.

[10] Fed. R. Evid. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

956 (2000) ("[t]he district court is granted 'especially wide latitude' in Rule 403 balancing").

Finally, even if the admission of the unredacted tape amounted to plain error, it neither affected Taylor's "substantial rights" nor "seriously impaired the fairness" of the proceedings. Duarte, 246 F.3d at 60. The reference was general and the context ambiguous. The evidence of Taylor's guilt was overwhelming -- Cossia's direct testimony of two hand-to-hand sales, tapes of the encounters, testimony of surveilling officers who monitored Cossia's transmissions and linked the defendants to a car parked outside of the hotel.[11]

B.    **The Prosecutor's Reference to the North Stonington Incident in His Closing Argument**

Taylor also argues that the government's reference to the North Stonington incident in its closing compounded the earlier error and also amounted to prosecutorial misconduct. Again, because Taylor did not object at trial, our review is for plain error under Rule 52 (b). See United States v. Bey, 188 F.3d 1, 6 (1st Cir. 1999) (allegedly improper comments made by prosecutor during closing argument reviewed under plain error standard given defendant's failure to object

---

[11] The government linked this vehicle to Taylor and Webb through the testimony of one officer who identified the license plate number of the vehicle driven by the persons who met Cossia at the Blue Star Hotel on April 17, 1999, and another officer who testified that he had responded to a motor vehicle accident involving a car with the same plate number, which was registered to and driven by Thomas Webb.

to comments during trial); United States v. Rodriguez-Cardona, 924 F.2d 1148, 1153-54 (1st Cir. 1991), cert. denied, 502 U.S. 809 (1991) (prosecutor's references in closing argument to evidence of other crimes and wrongdoing as proof of defendant's character reviewed for plain error because defense counsel failed to object).

Taylor argues that the prosecutor in his closing argument referred to the excluded evidence for inappropriate purposes, namely to suggest criminal propensity. In effect, defendant argues that even if it were not error to admit the evidence for a limited purpose, it would be error to argue improper propensity evidence based on it.

While the government's closing argument is less than clear, it plainly does not rise to the level of plain error. First, the government did not refer to evidence that had been excluded by the court. The government simply repeated the words of the tape, again, words to which Taylor had not objected. Second, the reference did not encourage the jury to draw the prohibited inference between a prior bad act and criminal propensity. The government made its closing remarks on rebuttal, specifically directed to the arguments of defense counsel. Defense counsel stressed certain inconsistencies between Cossia's trial testimony and his grand jury testimony, which he had emphasized in Cossia's cross examination. At trial, Cossia testified that when the issue of whether he was working for the police came up at the April 17, 1999, meeting, he had vigorously disputed it. Before the grand

jury, however, Cossia suggested that he had grabbed Taylor physically and had thrown him against the wall.

The government argued in its rebuttal that what Cossia meant to say before the grand jury was merely that he had responded forcefully to Taylor's accusation, not that he had literally assaulted him. It used Cossia's reference to the North Stonington incident during the April 17, 1999, meeting with the defendants in order to dramatize Cossia's very forceful rebuttal of the accusation that he was a police officer. In the comments prefacing the North Stonington reference, the prosecutor stated: "Now, there was some talk of, oh, why did [Cossia] say he came back with them strong in the Grand Jury, with some Grand Jury testimony . . . . Listen to what's on the tape." The prosecutor then quoted the tape verbatim, ending with Cossia's comment: "If I were the police you would have been arrested over in North Stonington."[12] Finally, making it clear that the reference was

_____

[12] During the closing, the prosecutor said:

> They are asking, this is William Cossia.
> "Right, at the truck stop, over down the
> road by Brook's. Right there. We did you
> again. We met you over in North Stonington.
> Went down [a] side road and came up and
> shined a flashlight in my face. Now, you
> fellow had been jammed together [sic] now.
> If I'm the police, why aren't you jammed?"
> Meaning, I'm suggesting to you, if I'm the
> police, how come you weren't jammed on this
> previous occasion? Jammed, arrested. Over
> in North Stonington. How come, you can
> trust me. He comes right back at them.

addressing the alleged inconsistencies in Cossia's trial and grand jury testimony, the prosecutor noted: "And that's what he's [Cossia's] talking about, when, I submit to you, when he was talking to the Grand Jury. He says, talking about, I play fair too. He's assuring them, I play fair."

If it was within the court's discretion to admit the North Stonington reference in the tape to provide context to the April 17, 1999, conversation, and not for an impermissible purpose, then it surely was not error for the prosecutor to refer to it for a similar reason. And again, even if this was error, given the overwhelming evidence of Taylor's guilt, this reference in closing argument did not affect "substantial rights" or affect the fairness of the proceeding. Duarte, 246 F.3d at 60.

### C. Cossia's Testimony Concerning the Gun

Taylor made a timely objection to evidence that he had a gun during the April 17, 1999, transaction. He claims that the court erred in admitting the evidence under Rule 404(b) and Rule 403 and further takes issue with the court's instructions following the testimony on this issue. Since Taylor objected to the court's rulings, our review

---

They're telling him . . . we don't have any police contact unless we want it. He comes back. "Listen, if I were the police you would have been arrested over in North Stonington."

-17-

of whether to admit the evidence pursuant to Rule 404(b) is for an abuse of discretion.  United States v. Houlse, 237 F.3d 71, 77-78 (1st Cir. 2001), cert. denied, 532 U.S. 1074 (2001).  United States v. Manning, 79 F.3d 212, 217 (1st Cir. 1996), cert. denied, 519 U.S. 853 (1996).  We find that there was no error here.

Cossia's testimony concerning the gun was not inadmissible evidence of "other crimes, wrongs, or acts" under Rule 404(b).  There was nothing "other" about it.  The testimony was part and parcel of the charged transactions.  The jury surely could have found that Taylor carried the gun to protect the drugs he was selling and the cash he was receiving.  Moreover, given the timing of Taylor's gesture -- showing the gun after discussing whether Cossia was working for law enforcement -- his actions could be seen as reflecting his efforts to avoid police detection and thus his consciousness of his own guilt.  See, e.g., United States v. Shea, 159 F.3d 37, 39-40 (1st Cir. 1998), cert. denied, 526 U.S. 1077 (1999) (handgun was relevant, intrinsic evidence of crime and thus was "not Rule 404(b) evidence at all").

Nor was this evidence excludable under Rule 403. Rule 403 is directed to "unfair" prejudice to the defendant, the possibility that the jury will draw inferences that were not warranted by the evidence or permitted by the Rules.  In any event, the court's cautionary instructions were appropriate and addressed any such risk:

> I'd just like to mention, ladies and gentlemen, there's no -- the Defendants are not charged with possessing a firearm or a gun. The only bearing this would have on anything at all is whether it helps you in determining . . . whether they're guilty [of the crimes] with which they have been charged, which is conspiracy to deliver crack cocaine and delivery of crack cocaine. Aside from that, this has no significance.

See, e.g., Shea, 159 F.3d at 40 (upholding admission of gun under Rule 403 based in part on cautionary instruction); United States v. Hahn, 17 F.3d 502, 509 (1st Cir. 1994) (same).

## II.      CONCLUSION

Accordingly, we find no error in the conduct of the trial below and **affirm** the defendant's conviction.