# United States Court of Appeals
## For the First Circuit

No. 11-1294

UNITED STATES OF AMERICA,

Appellee,

v.

TREVOR A. WATSON,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Kevin L. Barron for appellant.
Zachary R. Hafer, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

September 25, 2012

**HOWARD**, <u>Circuit Judge</u>.  Trevor Watson was convicted, after a four-day jury trial, of attempting to kill a federal witness with intent to prevent testimony and communication with law enforcement, <u>see</u> 18 U.S.C. § 1512(a)(1)(A), (C), for which he was sentenced to 360 months' imprisonment.  He appeals the conviction, challenging several of the district court's evidentiary rulings and asserting that the prosecution's allegedly improper closing argument severely prejudiced his case.  We affirm.

**I.**

A brief summary of the facts suffices for now, although we will engage in a more detailed discussion of certain facts and evidence in our analysis of the claims presented on appeal.

In mid-2008, Curtis Best, his associate Antonio Narvaez, and their purported ringleader John Camacho were among those indicted for participating in a substantial Massachusetts-based cocaine conspiracy (the "Camacho conspiracy").  Best agreed to cooperate, and he assisted federal authorities in identifying additional co-conspirators, including the appellant Trevor Watson.  Based on this and other evidence, Watson was indicted in April 2010 for his personal involvement in the illicit operation.

On February 27, 2010 -- roughly two months prior to his indictment -- Watson, accompanied by his friend Jonathan Ace, approached Best and mutual acquaintance Al Rue outside of Ann Jackson's Barbershop in Boston's South End.  While Ace and Rue

engaged in casual conversation, Watson and Best slowly walked and talked, lamenting their recent lack of communication. A short distance from the barbershop, Watson stopped, enveloped Best in a faux embrace, and stabbed him ten times in the kidney, chest, arms, and hands while stating "So you talking? So you telling, huh?" At the time, Best was still actively cooperating with law enforcement on the Camacho case.

Ace and Rue separated the two, whereupon Best was transported to the hospital for emergency surgery. During his initial police interview the following day, Best described his assailant as a "light to medium skinned, short, stocky male that spoke with a Hispanic accent," and "a Spanish guy with an accent," neither of which fit the appellant. Several days later, Best recanted those descriptions, and with the assistance of a police-arranged photo array, identified Watson as his attacker.

Shortly thereafter, a federal grand jury in the District of Massachusetts indicted Watson on one count of attempting to kill a federal witness with intent to prevent testimony and communication with law enforcement, 18 U.S.C. § 1512(a)(1)(A), (C), and one count of using physical force against a federal witness with intent to prevent the same, see 18 U.S.C. § 1512(a)(2)(A), (C). Watson's first trial ended in a hung jury in November 2010. He was convicted after a second trial less than a month later, and

-3-

the district court imposed a 360-month incarcerative sentence. This timely appeal ensued.

<h2 style="text-align:center">II.</h2>

Watson challenges only his conviction, alleging that: (1) the district court erred in admitting certain documents and testimony at trial, and (2) an improper inference drawn by the prosecutor during closing argument irreversibly prejudiced his case. We address each of these claims in turn.

## A. Evidentiary Issues

Although the admissibility of evidence is ordinarily reviewed for abuse of discretion, United States v. Barrow, 448 F.3d 37, 42 (1st Cir. 2006), where, as here, the appellant failed to interpose any contemporaneous objections at trial, a district court's evidentiary determinations are subject only to plain error review, Udemba v. Nicoli, 237 F.3d 8, 16 (1st Cir. 2001). To prevail under this exacting standard, Watson must demonstrate that the district court's decision to admit any of the challenged evidence constituted (1) an error which was (2) clear or obvious, and which not only (3) affected his substantial rights, but also (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings. United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012).[1]

---

[1] The appellant directs our attention to certain general objections made by trial counsel, which, if interpreted broadly, he argues, might have preserved some of his evidentiary claims for

## 1. **Evidence Concerning the 2002 Paul Pierce Trial**

While Watson awaited trial for the subject offense, authorities seized from his prison cell three seemingly incriminating documents.  The first, a letter to his friend Ricky Knight, included the following pertinent excerpt:

> I am charged with intimidating a federal witness that has been working since 2007, and assault with intent to murder an informant in front of a barber shop.  The police report says it[']s a male 30-35 years old with a Spanish accent.  The police report also says [Best] identified me by putting both thumbs up at my picture . . . in the photo [a]rray. . . .  I had introduced my lawyer to the fact that if [Best] was to sign an aff[i]davit saying I'm not the guy who stabbed him it was some Spanish guy about 30, which I am not either, I'll be alright, so please holla at [Al Rue] and let's end this [stuff]."

In a second letter addressed to his friend Keith McCarthy, Watson wrote:

> I am charged with assault with intent to murder an[d] intimidat[e] federal informant . . . Curtis Jason Best . . . .  The incident happened at Ann's barbershop by Slades.  The barber that was there is a good friend Ricky Knight [phone number redacted] he also is good friends with [Best], so he could be very helpful.  I need you to find out if Ann the [barbershop] owner made a statement to help me or not.  The police report said it was a 30-35 year old man with a Spanish [a]ccent that assaulted [Best].  The Boston Police said

---

appeal.  After carefully reviewing the record, we conclude that any such objections were insufficient to put the district court on notice of the specific arguments that he now attempts to advance.  See United States v. Hernández, 218 F.3d 58, 69 n.9 (1st Cir. 2000).

[Best] picked out my picture 4 or 5 days later as his attacker. <u>The Paul Pierce [case] was the same way, but at trial, he changed his statements and I got found not guilty of [attempted murder]</u>. . . . Barber Rick - [phone number redacted]. I need [Best] to let those people know that it was a Spanish unknown person around 30 in a aff[i]davit. . . . I hear [Best] confronted the Spanish guy & cut him first, then the tables turned real ugly. I'll be here for a while, stay in touch, I'll look forward to your return letter.

(Emphasis added). Finally, in what appears to be a personal pre-trial checklist, Watson scribed the following:

(1) Have the Barber, TrueC, Bum, or someone have [Best] sign an aff[i]davit saying it[']s a 30 year old Spanish [g]uy.
(2) I had no knowledge of the Camacho case and no contact with anyone involved.
(3) Shara can put 10 witnesses at the scene saying it was a 30 year old Spanish [g]uy.
(4) Please have [Best] in court on the stand with my barber present, TrueC, Bum, Fred, Keith, & [a] host of others.
(5) . . . <u>Turned myself in [for the] Paul Pierce case and this one</u>.

(Emphasis added).

The potential evidentiary import of these documents is plain: they may fairly be viewed as evidence of a plan to solicit false or misleading eyewitness testimony. Less transparent, however -- at least without additional context -- is the significance of Watson's analogies to the "Paul Pierce case." Thus, after properly admitting the documents at trial as admissions by a party opponent, <u>see</u> Fed. R. Evid. 801(d)(2)(A), the court took

judicial notice, to which both parties expressly stipulated, of the following facts:

> I'm taking judicial notice of certain facts related to a 2002 Paul Pierce trial. Trevor A. Watson and two other individuals were charged with assault with intent to murder, assault and battery by means of a dangerous weapon, and assault and battery in relation to the stabbing of Paul Pierce at the Buzz Club in Boston, Massachusetts, on September 25th, 2000.
>
> Mr. Watson was found not guilty of each of the charges which charged assault with intent to murder, assault by means of a dangerous weapon. Those are the stabbing charges. But he was found guilty of assault and battery. That means an unlawful push, shove, punch, kneeing someone. But not the stabbing charges.
>
> Prior to the trial of the Paul Pierce case, Krystal Bostick told the Providence Police Department that on September 25th, 2000, she saw a man known to her as Trevor stab Paul Pierce in the back at the Buzz Club . . . Bostick also identified a photograph of Trevor Watson in an array. In grand jury proceedings before trial, Bostick, under oath, described Watson as attacking Pierce from behind trying to pull him down from the neck, and during this attack wielding a smooth edged knife attached to brass knuckles.
>
> . . . After her interview with the Providence Police, and her testimony in the grand jury, but prior to trial, Krystal Bostick reached out to Mr. Watson's defense counsel, met with defense counsel, and signed an affidavit during that meeting in which she recanted her prior testimony.
>
> . . . When called as [a] witness at trial, Bostick gave nonresponsive answers to the prosecutor's questions, including testifying that she did not remember the events at the Buzz Club, and at one point testified that she had no memory of where she was on September 25, 2000.

-7-

> Throughout her testimony, Bostick repeatedly recanted her prior statements and identifications. Specifically, with respect to Trevor Watson, Bostick acknowledged only that she had seen Watson on the night in question at the Buzz club and denied that she had seen Watson involved in any aspect of an altercation or possession of a knife.
>
> Now, those are matters as to which I have taken judicial notice of another case, not our case. I tell you that those matters are undisputed and clear from the transcript of that other case. Beyond that, I say nothing further.

See Fed. R. Evid. 201 (permitting judicial notice of adjudicative facts). Watson now argues that despite his prior stipulation, the judicially noticed facts constitute inadmissible "prior bad acts" evidence pursuant to Federal Rules of Evidence 404(b) and 403. We disagree.[2]

It is common ground that evidence of prior bad acts, including a defendant's antecedent criminal activities, may not be introduced to prove subsequent "action in conformity therewith." Fed. R. Evid. 404(b). Nevertheless, such evidence may be admissible if it holds special relevance -- that is, if it tends to prove a material fact apart from a mere propensity to behave in a certain way -- as long as its probative value is not substantially outweighed by any unfairly prejudicial effect. United States v.

---

[2] In stipulating to the trial judge's notice, Watson arguably relinquished his right to pursue this claim on appeal at all. See United States v. Carrasco-de-Jesús, 589 F.3d 22, 26 (1st Cir. 2009) (defining waiver as the "intentional relinquishment of a known right"). Even if the claim was not waived, we reject the argument on its own terms in any event.

-8-

<u>Mare</u>, 668 F.3d 35, 38-39 (1st Cir. 2012). Here, Watson's abstract references to the "Paul Pierce case" -- in which he was acquitted, in part due to multiple eyewitness abjurations -- are specially relevant in that they evince a clear consciousness of guilt, the full weight of which would be lost on the jury absent the introduction of some limited factual foundation. <u>See</u> <u>United States</u> v. <u>Gilbert</u>, 229 F.3d 15, 20 n.3 (1st Cir. 2000) (recognizing consciousness of guilt as a basis for special relevance under Rule 404(b)); <u>cf.</u> <u>United States</u> v. <u>Charles</u>, 456 F.3d 249, 256 (1st Cir. 2006) (affirming admission of prior bad acts evidence, in part because it was "highly relevant to the narrative of the [subject offense]").

Nor were these facts excludable under Rule 403, which is designed to filter "unfair" prejudice to the defendant -- the possibility that the jury will draw inferences that were not warranted by the evidence or permitted by the rules. <u>See</u> <u>United States</u> v. <u>Taylor</u>, 284 F.3d 95, 104 (1st Cir. 2002). Watson's association with an attack on a local sports celebrity is unusually conspicuous, and probably adverse to him -- but not unfairly prejudicial. The Pierce comparisons were originally invoked not by the government, but by the appellant himself, and the court's corresponding notice was narrowly confined to the material necessary for an understanding of their gravity. Indeed, the judge explicitly forbade the government from intimating the motivation

for Krystal Bostick's recantation (that is, her fear of Watson). That restriction, and the judge's cautionary instructions addressing the jury's ability to weigh the evidence, further circumscribed any prejudicial impact.[3] See id. (upholding admission of 404(b) evidence in light of trial judge's cautionary instruction).

In the end, Rule 403's balancing act "is a quintessentially fact-sensitive enterprise, and the trial judge is in the best position to make such factbound assessments." Udemba, 237 F.3d at 15-16. For that reason, "[o]nly rarely and in extraordinarily compelling circumstances will we, from the vista of a cold appellate record, reverse a district court's on-the-spot

---

[3] Specifically, the judge noted:

> So powerful, however, is your role as jurors that once I start reading, even though I'm saying this is undisputed . . . you as jurors can decide whether to believe what I've read, but you can disbelieve it and disregard it. It's evidence. And just like the evidence from any witness, I will tell you . . . you may believe everything that any one of these witnesses says to you here from the witness stand; but equally, as you are common sense men and women, you may disbelieve and disregard it. . . . Now, those are matters as to which I have taken judicial notice of another case, not our case. . . . Beyond that, I say nothing further.

The judge gave a similar cautionary instruction at the close of the case, stating: "[T]he lawyers said, well, we don't dispute [those judicially noticed facts]. That's a stipulation. But with respect to [the Pierce case], so powerful is your role as jurors [that] you can disbelieve that."

judgment concerning the relative weighing of probative value and unfair effect." Id. at 16 (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988)) (internal quotation marks omitted). The circumstances here are neither extraordinary nor compelling; the trial judge merely presented the jury with an abbreviated context for those references, made by the appellant, that supported the narrative and insinuated his consciousness of guilt. From this we can discern no error, plain or otherwise.

### 2. **Testimony Concerning the Camacho Conspiracy**

In his second assignment of evidentiary error, Watson assails the admission of all testimony related to the Camacho conspiracy. Specifically -- or generally, given the sweeping imprecision of his challenge -- he claims that: (1) the testimony of Curtis Best, Best's former co-conspirator Antonio Narvaez, and DEA Agent Dennis Barton "cast a pall of fear and loathing and accentuated unfair prejudice"; and (2) the "repetitive and unnecessary . . . testimony by [Narvaez and Barton does] little more than bolster Best's testimony."

We need not tarry. We presume that the appellant's first contention rests, once again, on Rules 404(b) and 403. The argument is unpersuasive. Watson's participation in the Camacho conspiracy, and Best's cooperation with authorities -- to which Best, Narvaez, and Barton testified extensively -- had special relevance because it demonstrated Watson's motive: to eliminate

-11-

the snitch. See Fed. R. Evid. 404(b) (noting that "prior bad act" evidence "may be admissible for another purpose, such as proving motive"). Additionally, the crime with which Watson was charged required the government to prove not only that he attempted to kill Best, but that he did so with the specific intent to prevent Best from testifying or communicating with law enforcement. See 18 U.S.C. § 1512(a)(1)(A), (C). The Camacho testimony was therefore essential to prove a necessary element of the subject offense. Given the critical nature of this evidence, its probative value was not substantially outweighed by any unfair prejudice. See United States v. DeCicco, 370 F.3d 206, 214 (1st Cir. 2004) (finding danger of unfair prejudice to be minimal where 404(b) evidence was offered "for the limited purpose of showing motive"); United States v. Alzanki, 54 F.3d 994, 1007 (1st Cir. 1995) (where evidence is probative of an element of a charged crime, Rule 404(b) does not automatically preclude its admission).

As to the latter claim of improper bolstering, Watson is unable to identify which parts of Narvaez's or Barton's testimony might be suspect. Accordingly, we reject this argument.

### 3. Ann Jackson's Eyewitness Testimony

Soon after the February 27, 2010 attack, Boston Police Detective John Kelleher interviewed Ann Jackson, who owned the barbershop where the incident occurred. According to Kelleher's testimony, Jackson initially identified Watson as Best's assailant,

-12-

requesting anonymity for fear of reprisal. During Watson's subsequent trials, however, Jackson recanted her identification; generally uncooperative, she denied any knowledge of the attack and essentially refused to respond to questions intended to elicit the reason for her inconsistent statements.

Although Watson broadly challenges the admission of Jackson's testimony, he is able to offer only an oblique suggestion that "the government wanted to convince the jury that Jackson was afraid of Watson when it had no admissible evidence to show that this was true." That elaboration falls short of the development required for consideration on appeal. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

In any event, our review of Jackson's testimony provides no support for this challenge. Jackson was called as an eyewitness, albeit a reluctant and recalcitrant one, to the critical event in the case. After she reiterated, during direct examination, her inability to recall the events at issue, the following colloquy ensued:

> Prosecution: Do you remember telling Detective Kelleher that you didn't want to get involved because you were afraid that the young people would just shoot you?
>
> Jackson: Yes, I did.

Prosecution: Is that why . . . your memory's failing you today?

Jackson: I don't understand what you mean.

Prosecution: Is that why you're saying that you don't remember what you said previously to the detectives because you're afraid?

Jackson: No.

Prosecution: Are you . . . denying you saw the altercation because you're afraid for your own safety?

Jackson: No.

At bottom, Jackson conceded that she was afraid of "neighborhood" reprisal, and was asked whether this fear caused her about-face. There was nothing improper about the admission of this testimony, and without more, Watson's vague protestation to the contrary lacks merit.

### 4. <u>Inadvertent Introduction of Prior Criminal History</u>

In his final evidentiary charge, Watson contends that the admission of a document bearing his partial criminal history was plainly erroneous. It was not.

The exhibit in question comprised the criminal complaint in this case, as well as the supporting affidavit of DEA Special Agent Brian Tomasetta. Tucked on page three of the eight-page document, a footnote contained the following brief recitation of the appellant's partial criminal record:

> WATSON has a significant and violent criminal history. In addition to numerous state arrests for assault and battery and drug and

gun-related charges, WATSON was convicted of the following felonies: (1) Possession of a Class B controlled substance, Roxbury District Court, in 2008; (2) Assault and Battery, Suffolk Superior Court, in 2000; (3) Felon in Possession of a Firearm, U.S. District Court, District of Massachusetts, 1995; (4) Armed Robbery, Suffolk Superior Court, 1986; and (5) Robbery, Roxbury District Court, 1986.

The government acknowledges that the admission of this material constituted clear and obvious error, but that alone is insufficient to satisfy the plain error test. The appellant must also show that the error affected his substantial rights, as well as the fairness, integrity, or public reputation of the judicial proceedings. See Savarese, 686 F.3d at 12. He has not met that burden.[4]

There is little question that the inclusion of the footnote was inadvertent: the government, on at least one prior occasion, had voluntarily declined to submit evidence on the ground that it similarly referred to Watson's criminal history. Nor was the challenged material called to the jury's attention, or elicited at trial in any way beyond its inclusion in Agent Tomasetta's affidavit. See United States v. McCallum, 584 F.3d 471, 478 (2d

---

[4] The appellant's argument consists of the following: "[T]he government introduced, without objection . . . a complaint affidavit of Agent Tomasetta containing, among other hearsay, a recital of Watson's criminal history . . . , a bolstering of informant Best, and an extensive description of Watson's alleged participation [in the Camacho conspiracy]." The Rule 404(b) component has already been addressed, see supra Section II.A.2, and the bolstering and hearsay allegations are not sufficiently developed, see Zannino, 895 F.2d at 17; see also United States v. Rodriguez, 675 F.3d 48, 59 (1st Cir. 2012) ("[I]t is not the job of this court to do [appellant's] work for him.").

Cir. 2009) (noting as relevant to the 404(b) analysis that "the government did not draw undue attention to the prior convictions"). Indeed, to the extent that the jurors might have been aware of the information, it revealed little more than the fact that Watson had an extensive history of violent crime -- a fact of which they were already cognizant, given the proper admission of evidence concerning the Paul Pierce and Camacho cases. Cf. United States v. Harrington, 370 F. App'x. 216, 219 (2d Cir. 2010) (affirming the admission of 404(b) evidence, in part because "the jury was already aware . . . that the defendant had committed a prior felony").

To be sure, the footnote should have been redacted, and its admission was improper. See Fed. R. Evid. 404(b). It would appear, however, that the impropriety was simply an oversight by all parties involved, and in light of the otherwise overwhelming evidence of Watson's guilt, we do not think that this isolated reference to his partial criminal record warrants a new trial. Cf. United States v. Allen, 425 F.3d 1231, 1236 (9th Cir. 2005) (finding no error, given overwhelming evidence of guilt, in district court's denial of motion for mistrial where witness had inadvertently referred to criminal defendant's previous incarceration).

## B. Prosecution's Closing Argument

Watson's remaining challenge is also readily dispatched. Specifically, he posits that the following statements, made by the

prosecutor in rebuttal to his counsel's closing argument, created a threat of unfair prejudice:

> Don't discount the importance of the testimony of Ann Jackson which at first may not have seemed that significant. But if you look closely at what she said, and you remember what Detective Kelleher and Special Agent Barton told you that when they talked to her she was scared and nervous and apprehensive, and remember her own testimony to the effect of kids these days will just shoot you. . . . And I ask you particularly to think about her testimony in light of the judicial notice Judge Young took at the beginning of this case regarding the Paul Pierce matter and Krystal Bostick and how she initially saw a knife in Trevor Watson's hands, and by the time the trial came around she didn't remember that anymore.

Because defense counsel did not object to these statements during trial, our review is, once more, for plain error only. United States v. Allen, 469 F.3d 11, 16 (1st Cir. 2006). Thus, the prosecutor's remarks, even if erroneous, will necessitate reversal of the verdict only if Watson shows, at the very least, that they affected the outcome of his trial. See United States v. Van Anh, 523 F.3d 43, 55 (1st Cir. 2008). He falls short of doing so.

In light of the strong evidence of Watson's guilt, it is clear that these remarks did not affect his substantial rights. As such, we need not analyze whether the allegedly improper assertions were a mere fair commentary or a skirting of the trial judge's effort to cabin propensity evidence. The overwhelming evidence of Watson's guilt -- including, inter alia, the testimony of several

eyewitnesses, which was largely corroborated by the content of Watson's self-incriminating letters -- significantly reduced the likelihood that the remarks unfairly prejudiced the jury's deliberations, and Watson has not proffered evidence remotely sufficient to potentially refute this conclusion. See United States v. Verrecchia, 196 F.3d 294, 302 (1st Cir. 1999) (inappropriate statements in prosecution's closing argument did not amount to plain error where evidence was otherwise overwhelming); United States v. Manning, 23 F.3d 570, 574 (1st Cir. 1994) (same). The chance that these statements, excessive though they may have been, affected the outcome of the trial was negligible.

In all events, the district court limited the risk of any residual prejudice by strongly cautioning the jury that counsel's closing arguments were not evidence, and directing the jurors to base their verdict solely on the evidence as they remembered it. See United States v. Mejia-Lozano, 829 F.2d 268, 274 (1st Cir. 1987) (finding that similar instructions mitigated the prejudicial effect of misstatements made during closing argument). Thus, counterbalanced by a mountain of evidence, and couched by the district court's timely (and presumably followed) jury instructions, see United States v. Gonzalez-Vazquez, 219 F.3d 37, 48 (1st Cir. 2000), the remarks by the prosecutor in rebuttal, though perhaps improper, did not amount to plain error.

## III.

For the reasons elucidated above, we **<u>affirm</u>** the appellant's conviction.