# United States Court of Appeals

## For the First Circuit

No. 19-2134

TREVOR A. WATSON,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Thompson, Howard, and Gelpí,
Circuit Judges.

Catherine Sevcenko for appellant.
Mark T. Quinlivan, with whom Nathaniel R. Mendell, Acting
United States Attorney, was on brief, for appellee.

June 15, 2022

**GELPÍ**, **Circuit Judge**.  Petitioner-Appellant Trevor A. Watson ("Watson") appeals from the denial of his petition for habeas corpus, alleging ineffective assistance of counsel.  We affirm the judgment below.

**I. Background**

**A. The Jury Trial and Appeal**[1]

On April 21, 2010, Watson was indicted on two counts of attempting to kill a federal witness with intent to prevent testimony and communication with law enforcement.  See 18 U.S.C. § 1512(a)(1)(A),(C),(a)(2)(A),(C).  The events that led to the charges occurred on February 27, 2010, when Watson stopped by Ann's Unisex Barbershop in Boston's South End to pay a visit to his friend and barber, Ricky Knight.  Watson's longtime friend, Curtis Best ("Best"), was standing outside the barbershop chatting with Albert Rue ("Rue"), an acquaintance of both Watson and Best. Watson approached Best and asked him to talk privately.  The two had not communicated for some time.  They walked away and engaged in some small talk.  Thereafter, "[a] short distance from the barbershop, Watson stopped, enveloped Best in a faux embrace, and stabbed him ten times . . . while stating 'So you talking?  So

_____

[1] The facts of the underlying criminal case have been thoroughly described in United States v. Watson, 695 F.3d 159 (1st Cir. 2012), in which we affirmed petitioner's conviction on direct appeal.  In this opinion, we refer only to those facts salient to the issues before us.

- 2 -

you telling, huh?'" United States v. Watson, 695 F.3d 159, 162 (1st Cir. 2012) Rue drove Best to Boston Medical Center, where he underwent surgery, and ultimately lived. At the time, Best was actively cooperating with federal authorities on a drug-related case that involved his and Watson's former drug supplier, John Camacho. Best provided the Drug and Enforcement Administration ("DEA") information that identified potential co-conspirators, including Watson.

Watson's trial began on October 25, 2010, and ended with a hung jury. Following a four-day retrial, he was convicted, and the district court sentenced him to an imprisonment term of 360 months. Watson appealed his conviction, challenging several evidentiary rulings and asserting that the prosecutor's closing argument was prejudicial to his case. Watson, 695 F.3d at 161-62. We affirmed.

On direct appeal, we first addressed the admissibility of evidence pertaining to a 2002 criminal case before the Massachusetts Superior Court in which Watson and two other individuals were charged with assault with intent to murder and assault and battery in relation to the stabbing of former Boston Celtics player, Paul Pierce (the "Paul Pierce case"). Watson, 695 F.3d at 163-64. The district court took judicial notice of the testimony of Krystal Bostick ("Bostick") during that trial, as evidence of Watson's consciousness of guilt. Id. at 164-65. It

- 3 -

informed the jury that after Bostick spoke with the Providence Police Department and offered her testimony to the grand jury, but prior to trial, she reached out to Watson's counsel and recanted. Id. Additionally, during the trial itself, "[she] repeatedly recanted her prior statements and identifications." Id. at 164. We ruled that the district court properly took judicial notice of these facts because the reference to the Paul Pierce case was invoked by Watson himself and, although likely adverse to him, it was not unfairly prejudicial. Id. at 165-66. We further held that the instructions imparted to the jury remedied any prejudicial effect. Id.

Next, we found no error by the district court in admitting the testimonies of Best, his co-conspirator Antonio Narvaez, and DEA Agent Dennis Barton, given that the same were relevant in demonstrating Watson's motive for stabbing Best and "[their] probative value was not substantially outweighed by any unfair prejudice." Id. at 166. Third, we addressed Watson's challenge to the admission of an unredacted footnote in the supporting affidavit of DEA Special Agent, Brian Tomasetta (the "Tomasetta affidavit"). We concluded that, although the footnote therein should have been redacted, said error only revealed Watson's criminal history, which was otherwise evidenced at trial. Id. at 167-168.

**B. The Habeas Proceedings**

On January 14, 2014, Watson filed a motion before the district court, pursuant to 28 U.S.C. § 2255, to vacate his conviction based upon ineffective assistance of counsel. Specifically, Watson argued therein that his attorney committed three errors of constitutional magnitude, which were: (1) his decision not to object to the admission of the Paul Pierce case statements, (2) his failure to object to unredacted footnotes in the Tomasetta affidavit admitted as evidence, and (3) his failure to investigate, contact witnesses identified by Watson, and offer evidence that Best's status as an informant was not the reason why Watson stabbed him; instead Best owed Watson money that Best gave him to promote his music career.

Following a hearing, the district court found that Watson's claims pertaining to the Paul Pierce case and the Tomasetta affidavit had already been considered and rejected on direct appeal and, as such, it could not entertain the same. The district court further reiterated our ruling that its judicial notice was "narrowly confined to the material necessary." Watson, 695 F.3d at 165. Moreover, assuming arguendo that said two claims were not wholly foreclosed by our decision in the direct appeal, the district court concluded that Watson failed to prove ineffective assistance of counsel.

Turning to Watson's claim not raised in his 2012 direct appeal, the district court held that it was skeptical to find constitutional error in counsel not contacting any of the witnesses whose names Watson provided. First, the district court noted that, at trial, Watson's attorney "did develop evidence, primarily through Rue's testimony, that people very close to Best had no idea he was an informant." The district court next held that Watson's attorney engaged in genuine efforts to introduce evidence of Best's alleged debt to Watson until the court sustained the prosecutor's objection regarding such line of questioning. Finally, the district court found that even if Watson's attorney committed constitutional error, the same was not prejudicial to Watson. This appeal followed.

We address each issue seriatim, as well as a new matter not raised below. While the law of the case applies to previous litigated issues already decided on appeal, this doctrine does not automatically bar ineffective assistance of counsel claims. See Fernandez-Garay v. United States, 996 F.3d 57, 61 (1st Cir. 2021). However, for any such properly raised issues we limit ourselves to reviewing the habeas record itself. Cf. Cullen v. Pinholster, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the [] court that adjudicated the claim on the merits."); see also Atkins v. Clarke, 642 F.3d 47, 48-50 (1st Cir. 2011).

- 6 -

## II. Standard of Review

In a habeas appeal, "'[w]e generally do not rule on questions -- whether of fact or of law -- until a district court has done so, . . . allowing the parties to hone their arguments [to the district court] before presenting them to us.'" Shea v. United States, 976 F.3d 63, 82 (1st Cir. 2020) (quoting Moore v. United States, 871 F.3d 72, 79 (1st Cir. 2017)). We review the district court's legal conclusions de novo and apply a clear error standard to its factual findings. Cody v. United States, 249 F.3d 47, 52 (1st Cir. 2001); see also Familia-Consoro v. United States, 160 F.3d 761, 764-65 (1st Cir. 1998).[2]

## III. Discussion

The Constitution guarantees a defendant's right to fair trial, including the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 685-86 (1984). "[A]ttorneys must deliver, at minimum, 'effective' representation or 'adequate legal assistance' to their clients." Fernandez-Garay, 996 F.3d at 61-62 (quoting Strickland, 466 U.S. at 686). To demonstrate ineffective assistance of counsel in violation of the Sixth Amendment, Watson must establish that (1) "counsel's representation 'fell below an objective standard of reasonableness,'" and (2) "'a reasonable probability that, but for

---

[2] The district court issued a certificate of appealability with regards to Watson's ineffective assistance of counsel claims.

counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 62 (quoting Padilla v. Kentucky, 599 U.S. 356, 366 (2010)); see also Strickland, 466 U.S. at 688. To prevail, Watson must satisfy both prongs of the Strickland test. Courts do not need to assess the performance prong "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." Id. at 697.

## A. Judicially Noticed Facts of the Paul Pierce case

Watson contends that trial counsel's failure to object to the scope of the judicially noticed facts from the Paul Pierce case resulted in the jury finding out about testimony from Watson's involvement in said high-profile case before any other evidence was introduced in his federal trial. As such, his otherwise effective defense was impaired.

On direct appeal we addressed the evidentiary aspect of this matter. See Watson, 695 F.3d at 164. We explained that "Watson's abstract references to the 'Paul Pierce case' -- in which he was acquitted, in part due to multiple eyewitness abjurations -- are especially relevant in that they evince a clear consciousness of guilt, the full weight of which would be lost on the jury absent the introduction of some limited factual foundation" and as such, it was admissible prior bad acts evidence. Id. at 165. This ruling constitutes the settled law of the case

and hence shall not be revisited in habeas review. <u>Fernandez Garay</u>, 996 F.3d at 62.

In now assessing whether trial counsel's representation fell below the reasonableness standard, the scope of our review is limited. First, Watson must show that counsel's performance was deficient. <u>Id.</u>; <u>see also</u> <u>Strickland</u>, 466 U.S. at 687. Only when counsel's strategy was "so patently unreasonable that no competent attorney would have made it" may we hold such performance as deficient. <u>Tevlin</u> v. <u>Spencer</u>, 621 F.3d 59, 66 (1st Cir. 2010) (quoting <u>Knight</u> v. <u>Spencer</u>, 447 F.3d 6, 15 (1st Cir. 2006)). "Review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" <u>Id.</u> (quoting <u>Strickland</u>, 466 U.S. at 688-89).

Watson asserts that the district court did not limit judicial notice to admit only the fact that he was one of the defendants in the Paul Pierce case but went beyond and pointed to Bostick's recantation throughout said case. Additionally, he argues that in his retrial, contrary to the first trial, the district court failed to instruct the jury not to speculate as to the reason for Bostick's recanted testimony. Watson, thus, posits that trial counsel hence failed to object to said judicial notice, as well as to challenge it at sidebar.

The district court found that Watson's argument was a "repackaging of a claim that has already been rejected by the First Circuit" and could not be revived through a § 2255 motion. Moreover, the district court held that, even assuming arguendo that Watson's claim was valid, "fresh review by [the district court] does not yield a different outcome."

A trial court may take judicial notice of adjudicative facts not subject to reasonable dispute where, inter alia, they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). We held on direct appeal that the district court did not err in taking judicial notice of Bostick's testimony in the Paul Pierce case as it constituted facts not reasonably disputed from a previous criminal case relating to Watson himself. See id.; see also Watson, 695 F.3d at 164. The district court's judicial notice to the jury included the following:

> After her interview with the Providence Police, and her testimony in the grand jury, but prior to trial, Krystal Bostick reached out to Mr. Watson's defense counsel, met with defense counsel, and signed an affidavit during that meeting in which she recanted her testimony. To recant means to say, well, that's not true . . . . Throughout her testimony, Bostick repeatedly recanted her prior statements and identifications.

We now conclude that Watson has failed to meet the prejudice prong. Although trial counsel could have indeed objected to the district court's notice to the jury, given that the notice

- 10 -

was not given in error -- as per our ruling on direct appeal -- no objection was needed. And even assuming it was counsel's failure to object, this per se, does not warrant setting aside the judgment in a criminal case unless it influences its outcome. Fernandez-Garay, 996 F.3d at 63. Here, it is improbable that trial counsel's purported error changed the result of the case given that abundant evidence was otherwise introduced at Watson's trial, and which Watson does not contest now on appeal. Moreover, the district court stressed in its closing instructions that the jury should not engage in unsolicited speculations when evaluating the evidence in the case. The court further instructed the jury that it was not required to accept as conclusive any judicially noticed fact. See Fed. R. Evid. 201(f).

On this record, we find that Watson's ineffective assistance of counsel claim relating to the judicially noticed statements from the Paul Pierce case fails to meet the clear showing of prejudice required by Strickland.

## B. Tomasetta Affidavit

Watson next argues that trial counsel was ineffective by failing to object to the admission of the unredacted footnotes in the Tomasetta affidavit. Footnote 2 in the affidavit partially details Watson's criminal history, while footnote 3 gathers DEA agent Tomasetta's belief that Watson had a reputation for violence

that made Best "fearful and hesitant."[3]  The district court held that the claim had already been disposed by this court on direct appeal, and as such, Watson could not relitigate the same collaterally.  And, even if the claim could be addressed, Watson failed to establish that the admission of such evidence changed the outcome of the trial.

Circumscribing ourselves to the habeas issue, we conclude that Watson has failed to demonstrate that trial counsel's objection would have rendered a different outcome.  First, counsel stated under oath that he was not aware that the final version of the Tomasetta affidavit given to the jury included unredacted footnotes.  He only found out of this when he reviewed materials with Watson's appellate counsel.  "Under the reasonably competent assistance standard, 'effective representation is not the same as errorless representation.'"  United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978) (quoting Marzullo v. Maryland, 561 F.2d 540, 544 (4th Cir. 1977)).  Although the inclusion of said footnotes constitutes error, it was not ultimately prejudicial.  Watson, 695 F.3d at 167.  Ample evidence was admitted at trial that exposed

---

[3] On direct appeal, Watson only addressed footnote 2.  Watson now argues that footnote 3 also prejudiced him.  However, he fails to develop any distinct arguments separate from what he argued on direct appeal as to footnote 3.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)

Watson's criminal history.  Id. at 168.  The jury hence did not exclusively find out about Watson's delinquent past through the unredacted footnotes of the Tomasetta affidavit, but rather via other evidence.

### C. Alternative Motive Defense

Watson argues that trial counsel failed to investigate and present to the jury an alternative motive for the altercation between him and Best, to wit, Best owing Watson money from Best's involvement in the music industry.  The district court concluded that Watson's claim failed both prongs of the Strickland test. The district court found that counsel "made genuine efforts to introduce evidence of [said] history [between Best and Watson] at the second trial, to the extent such evidence was available."

We concur that trial counsel did in fact try his best to introduce evidence of Best's alleged debt to Watson.  When trial counsel cross-examined Albert Rue, he also attempted to introduce Best's statements to Rue about the money he owed to Watson. However, the prosecutor objected to the substance of counsel's question and the district judge sustained it.  Counsel went on to question Rue about whether he knew Best was a government informant, which he denied.  Furthermore, when cross-examining Best himself, counsel asked him whether he owed money on the street, to which Best responded in the affirmative.

"[T]here is 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Rodríguez, 675 F.3d 48, 56 (1st Cir. 2012) (quoting Strickland, 466 U.S. at 689). Here, we cannot say that trial counsel's actions fell below the norm. To the contrary, as evidenced by the record, counsel raised before the jury the issue of whether Watson in fact knew Best was a federal informant. And, indeed, he strategized to generate reasonable doubt as to the matter. Additionally, counsel attempted to introduce the alternate theory but was impeded from doing so by the district court. Accordingly, Watson does not satisfy the first Strickland prong.

Even if counsel's performance was deficient, Watson did not establish "that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As the district court noted, there was considerable evidence presented during trial that would have contradicted an alternative motive. For example, Best testified that Watson did not take his wallet after stabbing him, thus eliminating the possibility of setting off the alleged debt. Also, while stabbing Best, Watson alluded to him being an informant by stating "So you talking? So you telling, huh?" Watson, 695 F.3d at 162. Finally, Watson and Best had a life-long relationship,

and therefore collecting the alleged debt from Best may not have been impossible.

**D. Advocate-Witness Rule**

Watson injects to his appeal a further issue of ineffective assistance which he failed to raise before the district court. He posits that trial counsel failed to object the district court not addressing a potential conflict under the advocate-witness rule, which prohibits an attorney from appearing both as an advocate and a witness in the same case.[4] "[A]rguments not presented to the trial court are, with rare exceptions, forfeit[ed] on appeal." Turner v. United States, 699 F.3d 578, 586 (1st Cir. 2012) (quoting In re Redondo Constr. Corp., 678 F.3d 115, 121 (1st Cir. 2012)). See also Singleton v. United States, 26 F3d 233, 240 (1st Cir. 1994). Although we can review forfeited claims for plain error, Watson "makes no attempt to show how [said claim] satisfies the demanding plain-error standard," and "that failure waives his claim." United States v. Cruz-Ramos, 987 F.3d 27, 40 (1st Cir. 2021) (emphasis in original).

**E. Cumulative Error**

Watson alternatively posits that the cumulative effect of his trial attorney's purported errors resulted in constitutionally deficient representation. Such claim is not

---

[4] See United States v. Angiulo, 897 F.2d 1169, 1194 (1st Cir. 1990).

covered by the certificate of appealability issued by the district court. Under 28 U.S.C. § 2253(c), we cannot consider an issue presented in a habeas petition unless a certificate of appealability is obtained "with respect to that issue." Butterworth v. United States, 775 F.3d 459, 469 (1st Cir. 2015) (quoting Peralta v United States, 597 F.3d 74, 83 (1st Cir. 2010)). Thus, the cumulative error claim is not properly before this court. Although we have the discretion to expand the scope of the certificate of appealability sua sponte, we decline to do so in light of our several rulings herein. See Holmes v. Spencer, 685 F.3d 51, 58 (1st Cir. 2012).

## IV. Conclusion

The judgment of the district court dismissing Watson's petition for habeas corpus is

**AFFIRMED**.