# United States Court of Appeals
## For the First Circuit

No. 06-2781

UNITED STATES OF AMERICA,

Appellee,

v.

JUSTINA JACQUELINE AYALA-TAPIA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before
Boudin, Chief Judge,
Lynch, Circuit Judge,
and Keenan,[*] Senior District Judge.

Elfrick Mendez-Morales, by appointment of the court, on brief for appellant.

Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Rosa Emilia Rodriguez-Velez, United States Attorney, on brief for appellee.

March 19, 2008

[*]Of the Southern District of New York, sitting by designation.

**BOUDIN, <u>Chief Judge</u>.** Justina Ayala-Tapia traveled by overnight ferry from the Dominican Republic to Puerto Rico, arriving at the Mayaguez port on February 1, 2006. Customs officials searched her luggage after an x-ray scan raised their suspicions; they discovered four heavily wrapped packages which, according to a field test and a drug-sniffing dog, contained narcotics. Later testing confirmed the presence of approximately 3.5 kilograms of heroin.

Ayala told the officials that the packages were given to her by a friend in the Dominican Republic, to be delivered to a man named Miguel waiting outside the port. She agreed to participate in a controlled delivery but Miguel, perhaps tipped off by the delay (or perhaps a fictitious character), did not show up. Thereafter, Ayala was indicted on one count of importing, and one count of possessing with intent to distribute, the controlled substance heroin. 21 U.S.C. §§ 841(a)(1), 952(a) (2000).

She went to trial in Puerto Rico's federal district court in April 2006. The government called the customs officials who had searched Ayala's bag, discovered the packages and conducted the field test; the parties stipulated to the weight and purity of the heroin. The government also presented expert evidence from a DEA agent about the street value of the seized heroin and the methods used to smuggle drugs onto the island.

Ayala testified as the only witness in her defense. She did not dispute that she had possessed the heroin but denied that she knew the packages contained the drug. She said that a friend named Ivelisse had asked her to bring the packages to Ivelisse's brother Miguel in Puerto Rico. Ayala claimed that she believed the packages to contain coffee and flour, possibly for use in Miguel's bakery. She was to meet him outside the port and, in exchange, he would give her a ride to the San Juan airport, from where she would fly back to her residence in New York.

Ayala explained that she would frequently travel to the Dominican Republic via Puerto Rico because her son lived in the former and her mother in the latter. She also claimed to earn a living by buying clothing in New York and selling it in the Dominican Republic. She supplied some further information about Ivelisse but not about how to contact her and said that she had no further information about Miguel or how to reach him.

The jury returned convictions on both counts. The district judge denied Ayala's motion for judgment of acquittal, Fed. R. Crim. P. 29, and on November 2, 2006, sentenced her to the statutory minimum (given the drug quantity) of 120 months in prison. 21 U.S.C. § 841(b)(1)(A). The judge rejected Ayala's request to apply the "safety valve" exception to the mandatory minimum, 18 U.S.C. § 3553(f) (2000); U.S.S.G. § 5C1.2; the judge

found that Ayala had not met the requirement of truthfully telling the government all she knew about the drug venture.

On appeal, Ayala first contests the sufficiency of the evidence to support her convictions. Only one element of the crimes--whether Ayala possessed the drugs "knowingly"--is at issue; if Ayala knowingly possessed the heroin, the large quantity itself provides the basis for an inference of intent to distribute. United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993). If she truly believed that the packages contained flour or coffee, then she committed no crime. We consider de novo whether the government presented evidence from which a rational jury could conclude beyond a reasonable doubt that Ayala knew she was carrying drugs. United States v. Mateos-Sanchez, 864 F.2d 232, 238 (1st Cir. 1988).

As is common in drug courier prosecutions, there was no direct evidence of what Ayala knew; whether the jury could reasonably infer knowledge depends, as common sense would suggest, on the surrounding facts and circumstances. Compare United States v. Barbosa, 906 F.2d 1366, 1368 (9th Cir.) ("[M]ere possession of a substantial quantity of drugs may be sufficient to support an inference of knowing possession."), cert. denied, 498 U.S. 961 (1990), with United States v. Jackson, 55 F.3d 1219, 1226 (6th Cir.) (if drugs are found in "hidden compartment" then additional evidence is necessary), cert. denied, 516 U.S. 926 (1995).

-4-

The government points to a number of factors that make the finding of guilty knowledge plausible in this case. As the government expert testified at trial, the drugs had a very substantial street value--approximately $300,000--and drug suppliers might be unwilling to entrust such valuable cargo to an ignorant courier, fearing that she might be insufficiently motivated to ensure that it safely reaches its destination. We have acknowledged that this is a reasonable inference. United States v. Thomas, 467 F.3d 49, 54 (1st Cir. 2006) (smugglers opt "for trusted and close associates . . . who are aware of the high stakes"), cert. denied, 127 S. Ct. 1850 (2007); see also United States v. Rodriquez, 192 F.3d 946, 950 (10th Cir. 1999) (collecting cases).[1]

Ayala acknowledged placing the packages in her luggage; this is not a case of a hidden compartment or the professed surprise discovery of items packed by another. See United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990). The heavy wrapping made it impossible to tell what was inside, but that could easily cut against Ayala's story in the jury's mind; why would

_____

[1]The opposite inference is also possible, see United States v. Del Aguila-Reyes, 722 F.2d 155, 158 (5th Cir. 1983) (Rubin, J., dissenting) (noting that "dupes who are unaware that they carry valuable cargo are less likely to steal it"); but the jury has leeway in considering which inference is more persuasive on given facts.

flour or coffee be packaged in such a strange fashion? Here, it is the circumstances of <u>this</u> case that work against the defendant.

Further, Ayala testified at trial; and "the jury is permitted to draw an inference of guilt from a deliberate false alibi." <u>United States</u> v. <u>Llinas</u>, 373 F.3d 26, 37 (1st Cir. 2004) (concurring opinion). The prosecutor's cross examination gave the jury a series of reasons to believe that Ayala was lying:

- she had never met Miguel before but planned to meet him outside the port and accept a ride to San Juan;

- she did not know Miguel's last name or phone number, or Ivelisse's phone number;

- she initially claimed to have told the customs officials that the packages contained coffee, but later admitted that she had told them it was flour for baking cakes; and

- her explanation for her roundabout route between the Dominican Republic and New York was attacked as implausible for a variety of reasons.

The jury might also have been skeptical that anyone would bother to transport a few kilograms of coffee or flour to Puerto Rico, especially in light of that island's own famous, historic coffee industry. <u>See</u> <u>Dooley</u> v. <u>United States</u>, 182 U.S. 222, 236 (1901) ("[Puerto Rico] had no manufactures or markets of its own, and was dependent upon the markets of other countries for the sale of her productions of coffee, sugar and tobacco.").

-6-

The jury is entitled to evaluate the witnesses, including Ayala, and could fairly have concluded that she lacked credibility. From that determination, especially in combination with the circumstantial evidence described above, an inference of guilt and a conviction may follow. Thomas, 467 F.3d at 55 ("Ultimately, it is [defendant's] own trial testimony that seals her fate on appeal."); Llinas, 373 F.3d at 37 (concurring opinion).

The same reasoning largely resolves Ayala's sentencing challenge as well. Under the so-called safety valve provision, 18 U.S.C. § 3553(f), defendants convicted of certain drug crimes who meet five requirements are to be sentenced "without regard to any statutory minimum sentence." Id. Ayala might have been a candidate for this leniency but the court found that she failed the fifth prong, i.e. the requirement that "the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense." Id. § 3553(f)(5).[2]

Ayala did offer to tell the government what she knew, but indicated that she would simply repeat her trial testimony. Given that the jury had necessarily disbelieved Ayala's story, there was some speculation during the sentencing hearing as to whether the district judge was required to find that Ayala had failed the fifth

[2]The other requirements are that the defendant not (i) have more than one criminal history point; (ii) have engaged in violence or possessed a gun; (iii) have participated in activity leading to death or serious injury; or (iv) have been a leader of the criminal enterprise. 18 U.S.C. § 3553(f)(1)-(4).

prong of the safety valve statute. Ultimately, the court explicitly rested on its own, independent finding that Ayala's story was not true, and we review that factual determination only for clear error. United States v. Stark, 499 F.3d 72, 80 (1st Cir. 2007).

For the same reasons that the jury could reasonably have disbelieved Ayala's testimony when assessing her guilt, the district court could reasonably reach the same conclusion in its safety valve determination. United States v. Marquez, 280 F.3d 19, 24-25 (1st Cir. 2002). Ayala emphasizes that she cooperated with the government by agreeing, at the time of the arrest, to participate in a controlled delivery to Miguel. But the statute calls for a particular form of cooperation--truthful disclosure-- and the judge permissibly concluded that Ayala had not complied.

Affirmed.