# United States Court of Appeals
## For the First Circuit

No. 06-2258

UNITED STATES OF AMERICA,

Appellee,

v.

ANTOIN QUARLES COMBS,
a/k/a ANTOINE COMBS-QUARLES,
a/k/a ANTOINE COMBS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark L. Wolf, U.S. District Judge]

Before

Torruella, Boudin and Howard, Circuit Judges.

Douglas J. Beaton for appellant.
Sandra S. Bower, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief, for
appellee.

February 11, 2009

**HOWARD**, <u>Circuit Judge</u>. A jury found Antoin Quarles Combs guilty of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g). He was sentenced to 240 months' imprisonment. In this appeal, Combs challenges his conviction on two grounds: first, that the trial court improperly declined to give his proposed jury instruction regarding witness intimidation; and second, that the government failed to offer sufficient evidence that the firearm and ammunition had traveled in interstate commerce. We reject both arguments and affirm.

**I.**

The events leading up to Combs's arrest may be described briefly. Combs was arrested after a motor vehicle stop in Dorchester, Massachusetts in 2005. Boston Police Officers John Conway and Dean Bickerton stopped the car in which Combs and two others (Somia Hicks and Tanisha Montgomery) were riding, citing suspicious activity. The officers testified that, after asking the driver Montgomery for her license and registration, they noticed a smell of marijuana coming from the car. They asked Combs to step out of the car, which he did.

Here the narratives offered by the witnesses diverge slightly. The officers testified that they saw that Combs was carrying a gun. Hicks, testifying as a defense witness, stated that she did not see a gun belonging to Combs at any point. The other differences between Hicks's testimony and the testimony of

-2-

the officers about the events of that evening amount to a disagreement about the specific words exchanged between Combs and the officers before and during an ensuing struggle. It is undisputed that there was an altercation between Combs and the officers, and that they struck him with their firearms in an attempt to subdue him. At the conclusion of the struggle, Combs was handcuffed and arrested. The officers recovered from the scene a .38 caliber Smith & Wesson revolver and five rounds of .38 caliber Remington Peters ammunition.

In due course, Combs was indicted for being a felon in possession of a firearm and ammunition. Four days prior to trial, Lisa Rudnicki, an agent of the bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), visited Hicks in her home. At trial, Hicks testified that Rudnicki had asked her a series of questions about the events surrounding the arrest. In response to her answers to those questions, Hicks testified, Rudnicki called her a liar and told her that she could be charged with perjury and sentenced to ten years in jail.[1] Hicks did not testify about either of these statements made by Rudnicki.

This exchange took place at Hicks's home, in front of two of Hicks's children, ages three and fifteen. Hicks had her three-

---

[1]In a sidebar conversation with counsel, the trial judge noted that Rudnicki also suggested to Hicks that Hicks's version of the events contradicted that of another witness and, in addition, that Rudnicki told Hicks that Combs had at one point planned to plead guilty.

year-old child on her lap during the encounter. Hicks testified that Rudnicki suggested that she should not "be with" anyone who had Combs's record, asked her what her children would do without her, and advised her to put her family first. Hicks testified that after this conversation, she was very upset and cried for about thirty or forty-five minutes. She said that she felt threatened and that she believed Rudnicki was trying to stop her from testifying in this case. Hicks did, nevertheless, testify at trial on Combs's behalf both about the arrest and the visit by Rudnicki.

Asserting that Rudnicki's visit with Hicks created an issue of witness intimidation, Combs's counsel requested a jury instruction that would permit a finding of reasonable doubt based on the government's allegedly improper conduct. The proposed instruction was:

> If you find that ATF Special Agent Lisa Rudnicki attempted to prevent Somia Hicks from testifying by threats or intimidation, you may draw an inference adverse to the prosecution. Such an adverse inference may be sufficient by itself to raise a reasonable doubt as to the defendant's guilt in this case.

The trial judge declined to give the requested instruction, because even though Rudnicki's conduct may have been improper, Hicks did in fact testify.[2] The court observed that, "[m]aybe something should

---

[2]The court stated that although Rudnicki's conduct was "quite close to the line, if not over the line" of impropriety, he did not have to "reach a decision as to whether [the statements made to Hicks] were improper, whether they went over the line because the witness did[] testify . . . ."

-4-

be done with regard to the ATF . . . but I'm not inclined to give an instruction to sanction possible misconduct that I haven't found to be misconduct in the circumstances where I don't perceive that the integrity of the trial has been injured."

During closing argument, defense counsel mentioned the alleged intimidation by Rudnicki, but he did not object to the instructions given to the jury, even though the trial judge expressly invited objections at the conclusion of his charge to the jury. Combs was convicted of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g).

Combs makes two arguments on appeal. First, he contends that the trial court improperly declined to give his proposed jury instruction on witness intimidation in response to Rudnicki's conduct. Second, he argues that the government did not offer sufficient evidence that the firearm and ammunition had traveled in interstate commerce, as required by 18 U.S.C. § 922(g).

**II.**

**A. Jury Instruction**

In order to properly preserve a challenge to jury instructions, a defendant must object to the instructions after the judge has charged the jury. See United States v. Munoz-Franco, 487 F.3d 25, 64 n. 40 (1st Cir. 2007); see also Fed. R. Crim. P. 30(d). When a defendant fails to object, we review the charge for plain error only. Munoz-Franco, 487 F.3d at 64 n. 40; see also Fed. R.

Crim. P. 52(b). Here Combs did not object despite an express invitation by the trial judge, and we accordingly apply the plain error test. That test requires that an appellant demonstrate: "(1) that an error occurred; (2) which was clear or obvious; and which not only; (3) affected the defendant's substantial rights, but also; (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Moran, 393 F.3d 1, 13 (1st Cir. 2004) (citation omitted). See also United States v. Olano, 507 U.S. 725 (1993).

Combs argues that Rudnicki's conduct violated his due process rights as her actions interfered with Combs's right to present his defense witnesses freely, and that the proposed instruction was an "appropriate remedy". See Washington v. Texas, 388 U.S. 14, 19 (1967) (holding that the Sixth Amendment right to present one's own witnesses as part of one's defense is a "fundamental element of due process").

The trial judge, although troubled by the agent's alleged statements, declined to make a finding of misconduct. More to the point, the court determined that no prejudice resulted from the conduct. We review that ruling for an abuse of discretion, United States v. Jahagirdar, 466 F.3d 149, 156 (1st Cir. 2006), but in fact there is no evidence whatever of actual prejudice. The witness testified in favor of the defendant; and nothing indicates

that the testimony was hedged or that even more favorable testimony was suppressed.

Hicks testified about both her recollection of the events of the arrest, and the interaction with Rudnicki. Although Combs characterizes Hicks's trial testimony as "halting[]" and suggests abstractly that it is impossible to know how Hicks might have testified absent Rudnicki's conduct, he does not argue that the substance of her testimony can be shown to have been affected by the alleged intimidation.

"There can be no violation of the defense's right to present evidence . . . unless some contested act or omission (1) can be attributed to the sovereign and (2) causes the loss or erosion of testimony which is both (3) material to the case and (4) favorable to the accused." United States v. Hoffman, 832 F.2d 1299, 1303 (1st Cir. 1987). This accords with the ordinary requirement that a claimed violation cause prejudice.[3]

---

[3]There is some authority in other circuits that government intimidation of a defense witness, even absent a showing of prejudice, can nevertheless amount to a due process violation. See United States v. Morrison, 535 F.2d 223, 228 (3rd Cir. 1976); United States v. Hammond, 598 F.2d 1008, 1013 (5th Cir. 1979). Those opinions predate United States v. Hasting, 461 U.S. 499 (1983), where the Supreme Court held that a reviewing court must ignore harmless errors, including most constitutional violations. 461 U.S. at 509. The court did distinguish three specific rights as rights that, when violated, can never be treated as harmless error: respecting counsel, an impartial judge and freedom from coerced confession. Id. at 508 n.6. None of those rights are at issue here. Later opinions have acknowledged that Hammond's analysis is no longer viable in the wake of Hasting. See, e.g., Peeler v. Wyrick, 734 F.2d 378, 381 (8th Cir. 1984).

-7-

Accordingly, under the test framed by Hoffman, there was no due process violation.

The requested instruction also presents a separate issue. Even though Hicks's testimony was available and employed, the instruction sought could conceivably be helpful to the defense and could rest on a theory of its own independent of a due process violation. An effort to tamper with evidence by a defendant can sometimes justify an inference of guilt, as can flight, deliberate provision of a false alibi, and similar conduct. See, e.g., United States v. Ayala-Tapia, 520 F.3d 66, 69 (1st Cir. 2008) (inference from deliberately false alibi); United States v. Otero-Mendez, 273 F.3d 46, 53 (1st Cir. 2001) (inference from defendant's flight).

In such cases, an adverse inference is permitted because the conduct is deemed relevant to the defendant's consciousness of guilt, see, e.g., United States v. Rosario-Diaz, 202 F.3d 54, 70 (1st Cir. 2000), which may weigh in favor of an inference that the defendant is in fact guilty. There is however, no direct analogue to "consciousness of guilt" when an individual government agent is accused of intimidating the witness; a concern arises if evidence is thereby lost, see Brady v. Maryland, 373 U.S. 83 (1963), but in this case evidence was not lost.

The defendant does not point us to any federal decision calling for an instruction that, where the evidence is not

affected, the jury may draw an adverse inference against the government. Combs suggests that the requested instruction was based on language from two earlier cases. See Merced v. McGrath, 2004 U.S. Dist. LEXIS 2107, at *32 (N.D. Cal., Feb. 10, 2004), and People v. Zamora, 615 P.2d 1361, 1370 (Cal. 1980). Both cases, however, involved issues of state and not federal law (with the former being in federal court on a habeas claim), and in neither case did the court hold that such an instruction was required.

Without laying down blanket rules, it is enough here that there was no clear error in refusing the instruction. Like the district judge, we have no reason to decide whether the questioning went too far. If we accept Hicks's version, it is not an especially attractive picture, but law enforcement is not a delicate business. And to make a complete assessment, the full context and a range of specific circumstances would need to be developed. See generally Webb v. Texas, 409 U.S. 95, 98 (1972) (per curiam).[4] Where, as here, the issue involves a particular fact pattern not likely to be repeated in just the same form, an assessment is all the more unnecessary.

---

[4]See also United States v. Vega-Figureroa, 234 F.3d 744, 752 (1st Cir. 2000); United States v. Jackson, 935 F.2d 832, 847 (7th Cir. 1991); United States v. Morrison, 535 F.2d 223, 228 (3d Cir. 1976); United States v. Thomas, 488 F.2d 334, 336 (6th Cir. 1973); United States v. Smith, 478 F.2d 976, 978-79 (D.C. Cir. 1973).

## B. Firearm and Ammunition

Combs challenges the sufficiency of the evidence for one element of the underlying offense: the requirement under 18 U.S.C. § 922(g) that the firearm or the ammunition be "in or affecting commerce."[5] We review sufficiency challenges to determine whether the evidence presented at trial, together with all reasonable inferences and viewed in the light most favorable to the verdict, would allow a rational jury to establish the defendant's guilt beyond a reasonable doubt. See United States v. Lopez-Lopez, 282 F.3d 1, 19 (1st Cir. 2002).

Combs's arrest and the recovery of the firearm and ammunition took place in Dorchester, Massachusetts.[6] We conclude that the jury reasonably determined there was sufficient evidence that the ammunition was "in or affecting commerce." In this regard, we note that the felon in possession statute applies independently to the possession of the firearm or the ammunition. If either the firearm or the ammunition was "in or affecting

---

[5]That statute provides in relevant part:
It shall be unlawful for any person --
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
. . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

[6]At trial, Combs suggested that the gun was planted on him. On appeal, however, he does not challenge the finding that he was in possession of the gun and the ammunition.

commerce," that is sufficient to meet the requirements of 18 U.S.C. § 922(g). Although there also may well have been sufficient evidence that the firearm was "in or affecting commerce," we need not reach this question here.[7]

In Scarborough v. United States, 431 U.S. 563, 572 (1977), the Supreme Court addressed the "in or affecting commerce" requirement of a precursor to the current felon in possession statute. The Court established a "minimal nexus" standard, requiring proof only of interstate travel of a firearm or ammunition. Id. In United States v. Wilkerson, 411 F.3d 1, 9-10 (1st Cir. 2005), we applied Scarborough and held that a firearm or ammunition is "in or affecting commerce" for the purposes of 18 U.S.C. § 922(g) if it has "traveled at some time" in interstate commerce. We have also said that the standard requires a showing that a firearm or ammunition has "been transported across State lines." United States v. Weems, 322 F.3d 18, 25 (1st Cir. 2003), cert. denied, 540 U.S. 892 (2003).

Combs would have us interpret the statute differently. He points to Jones v. United States, 529 U.S. 848, 855 (2000), and argues that the government must show that a firearm or ammunition had more than "merely a passive, passing, or past connection to commerce." Jones, involving a federal arson statute, is

---

[7]The government introduced evidence that the firearm was manufactured by Smith & Wesson Corporation in Springfield, Massachusetts and was shipped to New York in January, 1977.

inapplicable here. Combs's exact argument has been before us in Wilkerson and in Weems, and we rejected it on those occasions as we do here.[8] The language linking the regulated conduct to commerce in the statute in Jones differs from the language of 18 U.S.C. § 922(g), and Jones does not disrupt the Court's holding in Scarborough.

The government presented uncontroverted evidence that there are no commercial manufacturers of ammunition in the state of Massachusetts, as well as uncontroverted evidence that Remington Peters, the manufacturer of the recovered ammunition, has two manufacturing facilities: one in Connecticut and one in Arkansas. Thus, ammunition recovered in Dorchester, Massachusetts must have crossed state lines to get there.

In conclusion, (1) there was no error in the district court's refusal to issue Combs's requested instruction; and (2) there was sufficient evidence for a jury to conclude that either the firearm or the ammunition were "in or affecting commerce" as required by 18 U.S.C. § 922(g).

**Affirmed**.

---

[8]Other circuits have treated this issue identically, holding the nexus to interstate commerce to be satisfied under 18 U.S.C. § 922(g) if the firearm or ammunition has "traveled at some time" in interstate commerce. See United States v. Sawyers, 409 F.3d 732, 736 (6th Cir. 2005); see also United States v. Darrington, 351 F.3d 632, 634 (5th Cir. 2003); United States v. Gaines, 295 F.3d 293, 302 (2d Cir. 2002); United States v. Gallimore, 247 F.3d 134, 138 (4th Cir. 2001).