# United States Court of Appeals
## For the First Circuit

Nos. 11-1455
     11-1456

UNITED STATES OF AMERICA,

Appellee,

v.

ARJUSZ ERIK ROSZKOWSKI,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Howard, Stahl and Lipez,
Circuit Judges.

Amy M. Belger for appellant.
Donald C. Lockhart, Assistant United States Attorney with whom
Peter F. Neronha, United States Attorney, was on brief, for
appellee.

November 27, 2012

**HOWARD**, **Circuit Judge**. After a three-day trial, a jury in the District of Rhode Island convicted Arjusz Roszkowski of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and knowingly possessing a firearm with an altered serial number, id. § 922(k). Roszkowski now appeals, claiming that the district court erroneously precluded his proposed entrapment defense and improperly admitted certain evidence at trial. He also contends that the aforementioned statutes of conviction are unconstitutional pursuant to the Supreme Court's recent decision in National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566 (2012). We affirm.

**I.**

The pertinent facts, which we recount in the light most favorable to the verdict, United States v. Díaz, 670 F.3d 332, 337 (1st Cir. 2012), are uncomplicated. On November 5, 2009, Roszkowski, a convicted felon, placed a phone call to Christopher Zarrella, an undercover police officer posing as a black-market arms dealer. During that conversation, which was recorded, Roszkowski sought to procure, for the stated purpose of home defense, a 12-gauge shotgun, a 9 mm handgun, and various types of ammunition, including hollow-point bullets. Roszkowski also demonstrated a substantial knowledge of firearms and ammunition during the call, and he repeatedly expressed his interest in making future purchases from Zarrella. After settling on the desired

-2-

products and pricing terms, the two agreed to complete the transaction at a secluded Rhode Island park the following day.

That transaction, as evidenced by the instant appeal, did not go according to plan. As Roszkowski approached the designated exchange point, Detective Zarrella spotted a gun protruding from his front waistband. Fearing for his safety, Zarrella identified himself as a police officer and attempted, unsuccessfully, to arrest the appellant. A struggle ensued, during which Roszkowski discharged the firearm, critically injuring himself. He was quickly subdued, and a subsequent examination of his weapon, which had been manufactured in Ohio, revealed that its serial number had been removed.

Shortly thereafter, a federal grand jury in the District of Rhode Island indicted Roszkowski on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and one count of knowingly possessing a firearm with an altered serial number in violation of 18 U.S.C. § 922(k). He was ultimately convicted on both counts and sentenced to 180 months' imprisonment. This timely appeal followed.

## II.

Challenging only his conviction, Roszkowski alleges that (1) the district court's denial of his pretrial motions to unveil and subpoena an alleged confidential informant deprived him of his constitutional right to present a complete defense; (2) the

-3-

district court erroneously admitted certain evidence at trial; and (3) because the Commerce Clause does not endow Congress with the requisite authority to regulate the conduct covered by the underlying statutes of conviction, those statutes are invalid and unenforceable. We address each of these claims in turn.

## A. Discovery Motions

Prior to trial, Roszkowski -- who, against the persistent advice of the trial judge, waived his right to counsel and proceeded to represent himself -- filed motions to identify and subpoena a purported confidential informant ("C.I."), asserting that C.I.'s testimony was crucial to the development of a proposed entrapment defense. Specifically, Roszkowski proffered the following unsubstantiated facts, to which he claimed C.I. would testify: that he met and befriended C.I. while they were briefly co-habiting a Massachusetts halfway house; that C.I. sought his help in acquiring various firearms and ammunition; that C.I. provided him with the contact information of a supposed illicit arms dealer (Detective Zarrella) in order to obtain the contraband; and that C.I. urged him to bring a weapon to the transaction for protection. These facts, he contends, ground a colorable defense of entrapment -- and the trial court's denial of his discovery motions, and consequent exclusion of C.I.'s anticipated testimony, effectively deprived him of his constitutional right to present that defense. See Washington v. Texas, 388 U.S. 14, 17-19 (1967);

-4-

Brown v. Ruane, 630 F.3d 62, 71-72 (1st Cir. 2011).  Though ably advanced by counsel, the appellant's argument is unfounded.

Rulings on disclosure of informants ordinarily are reviewed for abuse of discretion, see United States v. Robinson, 144 F.3d 104, 106 (1st Cir. 1998) ("We review a district court's decision not to force the prosecution to divulge the identity of a confidential informant for abuse of discretion."), and the standard of review does not depend on the basis for the challenge to the ruling, see United States v. DeCologero, 530 F.3d 36, 72-74 (1st Cir. 2008)(reviewing for abuse of discretion the district court's evidentiary rulings that allegedly violated defendant's right to present a complete defense).  In assessing the district court's decision here, we focus on Roszkowski's reason for seeking the disclosure, which was to support his purported entrapment defense.

To mount a viable claim of entrapment, a defendant must make a threshold showing on two elements:  first, that government agents induced the crime with which the defendant was charged, United States v. Acosta, 67 F.3d 334, 337 (1st Cir. 1995); and second, that the defendant was not already predisposed to commit the crime, United States v. Rogers, 102 F.3d 641, 645 (1st Cir. 1996).  To demonstrate improper inducement, "a defendant must show not only that the government provided [him] with [an] opportunity to commit the crime, but also the existence of a 'plus' factor that raises concerns of government overreaching," examples of which

include "intimidation, threats, [or] dogged insistence." <u>United States</u> v. <u>Vasco</u>, 564 F.3d 12, 18 (1st Cir. 2009) (citations and internal quotation marks omitted).

At bottom, the failure to obtain C.I.'s projected testimony did not prejudice the appellant's entrapment defense. Even assuming that C.I. was, in fact, a confidential informant and in that capacity acted as a government agent, and also that he would have testified as Roszkowski suggests, at most his testimony would have established that the appellant was the target of a successful but otherwise unremarkable sting operation, which is ordinarily insufficient to constitute entrapment. <u>See</u> <u>United States</u> v. <u>Dávila-Nieves</u>, 670 F.3d 1, 9 (1st Cir. 2012) ("Operations which merely give a defendant an opportunity to commit a crime, including sting operations, ordinarily do not constitute entrapment."); <u>United States</u> v. <u>DePierre</u>, 599 F.3d 25, 27-28 (1st Cir. 2010) ("[T]he threshold that must be met to show <u>wrongful</u> inducement is a high one. By their nature, 'stings' . . . do 'induce' crimes, if that word is used in its lay sense. But it is settled that only <u>undue</u> pressure or encouragement are forbidden."). The only material evidence of inducement, had C.I. confirmed Roszkowski's claims, was that C.I. urged Roszkowski to bring a gun to the November 6 transaction -- a fact which, even if true, does not remotely approach the threshold showing necessary to establish

a defense of entrapment.[1]  See Vasco, 564 F.3d at 18.  Indeed, Roszkowski's own standby counsel conceded as much, acknowledging at the pretrial discovery hearing that he was "having a difficult time perceiving" how such a defense would be constructed under the apposite facts.

In the end, C.I.'s anticipated testimony would have, at best, marginally reinforced a tenuous defense, and the district court's refusal to compel that testimony, in light of the appellant's speculative proffer, did not amount to constitutional error.  See United States v. Rodriguez, 858 F.2d 809, 812 (1st Cir. 1988) ("Entrapment comes into play only when the accused has successfully carried what we have termed an 'entry-level burden.'" (citation omitted)); cf. Souza v. Ellerthorpe, 712 F.2d 1529, 1531 (1st Cir. 1983) (affirming denial of a habeas petition where the district court found that the trial court's refusal to compel

---

[1]  Roszkowski devoted much of his pretrial proffer to establishing that his participation in the transaction with Zarrella was a product of government inducement.  He reiterates that line of contention on appeal, stating that his "theory of the case was that the government entrapped him by using a confidential informant to get him to engage in an arms transaction with which he otherwise would never have involved himself."  This argument, however, misses the mark.  Roszkowski was neither indicted nor convicted for his attempted purchase of firearms from Detective Zarrella; accordingly, he could not have been entrapped into engaging in an arms transaction for which he was never criminally charged.  See Dávila-Nieves, 670 at 9 (holding that to be entitled to an entrapment instruction, "a defendant must adduce some hard evidence that . . . government actors induced him to commit the charged crime" (emphasis added) (citation and internal quotation marks omitted)).

disclosure of a confidential informant did not deny the defendant a fair trial because any benefit from the informant's testimony would have been "speculative" and "unlikely to affect the outcome of the trial").

## B. Evidentiary Issues

In his next assignment of error, Roszkowski assails the admission of two pieces of evidence:  (1) Detective Zarrella's testimony that the appellant discharged his firearm while resisting arrest; and (2) unredacted excerpts of his audiotaped phone conversation with Zarrella, in which he inquired about the availability of hollow-point ammunition.  Because Roszkowski did not contemporaneously object to the admission of this evidence at trial, our review is for plain error only, United States v. Ríos-Hernández, 645 F.3d 456, 462 (1st Cir. 2011), which requires him to show that "(1) an error occurred which was (2) clear or obvious and which not only (3) affected his substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of the judicial proceedings," United States v. Savarese, 686 F.3d 1, 12 (1st Cir. 2012).  For reasons upon which we elaborate below, we conclude that the appellant has failed to satisfy this heavy burden.

### 1. Detective Zarrella's Testimony

As part of its case-in-chief, the government introduced the details of the foiled November 6 transaction through the

testimony of Detective Zarrella. Specifically, Zarrella described the attempted arrest, the ensuing physical altercation, and Roszkowski's self-inflicted gunshot wound, in part, as follows:

> Zarrella: I had a very good grip on the Defendant, fortunately. But he was struggling . . . to get his hands free to gain better control of the pistol, in my mind. He couldn't do that because I had my hands on the pistol; one hand on the pistol, the other hand on his hands. So there was a struggle for control of where that weapon was pointed.
>
> . . .
>
> Prosecutor: And during the course of the struggle, did the Defendant ever give up the weapon?
>
> Zarrella: The Defendant never relinquished the weapon.
>
> Prosecutor: Did the Defendant ever comply with any of your commands?
>
> Zarrella: He did not.
>
> . . .
>
> Prosecutor: And did there come a time when [the struggle] ceased?
>
> Zarrella: Yes.
>
> Prosecutor: What caused the struggle to cease?
>
> Zarrella: There was a gunshot, which I could hear and feel, and then I observed a great deal of blood coming from Mr. Roszkowski, and he stopped struggling at that point.

Roszkowski now argues, for the first time on appeal, that Zarrella's testimony concerning the gunshot was merely propensity evidence, see Fed. R. Evid. 404(b), and that its probative value

was substantially outweighed by the risk of unfair prejudice, see Fed. R. Evid. 403. We think not.

It is common ground that evidence of prior bad acts, including a defendant's antecedent criminal activities, may not be introduced to prove subsequent "action in conformity therewith." Fed. R. Evid. 404(b); United States v. Watson, 695 F.3d 159, 165 (1st Cir. 2012). That prohibition, however, typically refers to evidence that is extrinsic to the crime charged, and is introduced for the purpose of showing villainous propensity. See, e.g., United States v. Epstein, 426 F.3d 431, 438-39 (1st Cir. 2005). Here, we needn't reach the question of propensity; the fact that Roszkowski discharged his weapon is intrinsic to its felonious possession. That is to say, the evidence comprises part and parcel of the core events undergirding the crime for which he was charged. Thus, the evidence is not "other acts" evidence at all, and, accordingly, Rule 404(b) is not implicated. See id.; United States v. Villarman-Oviedo, 325 F.3d 1, 11 (1st Cir. 2003).

Nor is the testimony excludable, as the appellant contends, under Rule 403, which permits the exclusion of evidence whose "probative value is substantially outweighed by the danger of unfair prejudice." The testimony at issue here was highly probative. It demonstrated both that the weapon was operable -- a necessary element of the subject offense, see 18 U.S.C. § 921(a)(3) -- and that the appellant knowingly possessed the weapon. As well,

it displayed the chain of events leading to the weapon's recovery by law enforcement. Although Roszkowski laments the testimony's prejudicial effect, he makes no showing of unfairness sufficient to counteract its highly probative value. "The mere fact that evidence is prejudicial does not trump the need for Rule 403 balancing: 'By design, all evidence is meant to be prejudicial; it is only <u>unfair</u> prejudice which must be avoided.'" <u>United States</u> v. <u>Raymond</u>, 697 F.3d 32, 35 (1st Cir. 2012) (quoting <u>United States</u> v. <u>Rodriguez-Estrada</u>, 877 F.2d 153, 156 (1st Cir. 1989)). Discerning no unfair prejudice, we cannot conclude that the district court's admission of this testimony was error, plain or otherwise.

## 2. <u>Recorded References to Hollow-Point Ammunition</u>

In his second claim of evidentiary error, the appellant challenges the district court's failure to redact, <u>sua sponte</u>, a portion of his recorded phone conversation with Detective Zarrella in which he sought to purchase hollow-point ammunition. More precisely, the contested colloquy was comprised of the following:

> Roszkowski: Also . . . any way I can get ammunition . . . from you too right now?
>
> Zarrella: Yeah, I can get you . . . all the ammo you want. The ammo's easy.
>
> . . .
>
> Roszkowski: Yeah, one box of slug and one box of double ought [sic], and can I have, ah, for a .9 millimeter, can I have - let me think, let me think. Just do you have any hollow points or no?

> Zarrella: I can get you any -- with ammo I can get you anything you want.
>
> Roszkowski: Okay.  Can I have like . . . three boxes of hollow points.
>
> Zarrella: Okay.
>
> Roszkowski: It's only for house protection, you know, so --
>
> . . .
>
> Zarrella: All right . . . probably gonna be around another hundred bucks.
>
> Roszkowski: Okay, that's good.

As with his first evidentiary challenge, Roszkowski rests his argument on Rules 404(b) and 403.  The argument is similarly unavailing.

As a preliminary matter, the "hollow-point" references are neither "prior bad acts" nor unduly prejudicial; they are intrinsic to the narrative of the subject offense, cf. Watson, 695 F.3d at 165-66, and demonstrate the appellant's familiarity with guns and ammunition, which indicates that he knowingly possessed the firearm and augments the likelihood that he was cognizant of its altered serial number.

By contrast, the risk of any unfair prejudice was minimal.  The challenged remarks were brief, and the enhanced lethality of hollow-point bullets was not suggested by the government.  The government neither explained what a hollow-point bullet is, nor emphasized the reference to them during the trial.

See id. at 168 (considering, in reviewing a 404(b)/403 claim for plain error, whether the government emphasized the challenged evidence during trial); United States v. Fouche, No. 92-50584, 1993 WL 402937, at *2 (9th Cir. 1993) (finding that testimonial references to defendant's use of hollow-point bullets were not unduly prejudicial, in part because the witness "did not testify about the effects [of] such bullets . . . [or] compare hollow-point bullets with any other type of bullets"). Moreover, any lingering untoward effects were almost certainly cured by the trial judge's instruction that the defendant was being tried only for possessing the firearm, and for no other conduct. See United States v. Candelaria-Silva, 166 F.3d 19, 36 (1st Cir. 1999) (holding that jury instructions are a useful means of allaying potential prejudice). Thus, though the hollow-point references were perhaps mildly adverse to Roszkowski, it is not obvious that they were improperly admitted, if indeed there was any error in their admission at all.

Even assuming, however, that the district court's failure to redact the references was an obvious error, the appellant has not shown that their admission "affected his substantial rights." Savarese, 686 F.3d at 12. The government's case against Roszkowski -- which included audio recordings and testimony of several eyewitnesses, among other evidence -- was overwhelming. Without more, these isolated remarks do not warrant a new trial.

-13-

**C. Constitutionality of 18 U.S.C. §§ 922(g)(1) and 922(k)**

Finally, in a quite different claim of error, Roszkowski posits that 18 U.S.C. §§ 922(g)(1) and 922(k) exceed Congress's Commerce Clause authority, and are therefore unenforceable -- a claim which we have repeatedly and unreservedly rejected. See, e.g., United States v. Joost, 133 F.3d 125, 131 (1st Cir. 1998) (deeming a Commerce Clause attack on § 922(g) to be "hopeless"); United States v. Diaz-Martinez, 71 F.3d 946, 953 (1st Cir. 1995) (finding § 922(k) to be a valid exercise of Congress's Commerce Clause powers). Despite this precedent, Roszkowski argues that, in light of the Supreme Court's recent decision in National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566 (2012), we should revisit the issue. Sebelius is a complex case based on intricate facts, and it ultimately propounds several holdings. Despite the difficulty in doing so, we believe it necessary to explicate, on the most basic level, the scenario that confronted the Sebelius Court in order to assess the claim asserted here.[2]

Sebelius involved a constitutional challenge to various provisions of the Patient Protection and Affordable Care Act ("the Act"), Pub. L. No. 111-148, 124 Stat. 119 (2010). As part of the Act, Congress enacted the "individual mandate," which requires

---

[2] We are mindful that, because this claim was not raised below, our review is for plain error. Savarese, 686 F.3d at 12. However, we find no merit to this challenge under any standard of review.

-14-

that, beginning in 2014, non-exempt individuals who fail to maintain "minimum essential" health care coverage must pay the government a "shared responsibility payment."  See 26 U.S.C. §§ 5000A(a), (b)(1).  Although the Court eventually upheld the mandate as a valid exercise of Congress's taxing power, the gravamen of the constitutional challenge was that Congress lacked the requisite authority to enact the mandate under the Commerce Clause.  In the course of his controlling opinion, Chief Justice Roberts agreed.  The problem, he explained, was that the individual mandate "does not regulate existing commercial activity[,] [but] instead compels individuals to become active in commerce by purchasing a product, on the ground that their failure to do so affects interstate commerce."  132 S. Ct. at 2587.  The Chief Justice concluded that such a construction of the Commerce Clause would impermissibly expand its already expansive reach.[3]

Seizing on what he perceives to be a new constitutional foothold, Roszkowski urges us to review our own Commerce Clause jurisprudence, citing the Chief Justice's opinion for the proposition that the simple possession of a firearm does not

---

[3] We need not, and therefore do not, express our opinion as to whether the Chief Justice's Commerce Clause discussion was indeed a holding of the Court.  See United States v. Henry, 688 F.3d 637, 641 n.5 (9th Cir. 2012) ("There has been considerable debate about whether the statements [in Sebelius] about the Commerce Clause are dicta or binding precedent.").

constitute commercial activity, and therefore cannot be regulated by Congress pursuant to the Commerce Clause. We disagree.

Section 922(g)(1) forbids convicted felons from possessing a firearm "in or affecting commerce," which includes the possession of a gun that previously traveled interstate, see United States v. Combs, 555 F.3d 60, 65 (1st Cir. 2009). Similarly, § 922(k) prohibits the possession, by any individual, of firearms with obliterated or altered serial numbers that have, "at any time, been shipped or transported in interstate or foreign commerce." In stark contrast to the individual mandate in Sebelius, these statutes do not "compel[] individuals to become active in commerce"; rather, they prohibit affirmative conduct that has an undeniable connection to interstate commerce. See 18 U.S.C. § 922(g)(1), (k); Combs, 555 F.3d at 65-66 (rejecting the argument that mere possession of a firearm, under 18 U.S.C. § 922(g), has an insufficient nexus to interstate commerce). The two provisions at issue reside in the heartland of Congress's authority under the Commerce Clause: "regulat[ing] the channels and instrumentalities of interstate commerce, as well as activities that substantially affect interstate commerce." United States v. Teleguz, 492 F.3d 80, 87 (1st Cir. 2007). Thus, even if Sebelius changed the Supreme Court's Commerce Clause jurisprudence, it did nothing to undermine the validity of 18 U.S.C. §§ 922(g)(1) and 922(k). Roszkowski's

reliance on <u>Sebelius</u> is misplaced, as is, therefore, his constitutional plaint.

## III.

For the foregoing reasons, the convictions are **<u>affirmed</u>**.