# United States Court of Appeals
## For the First Circuit

No. 13-2279

UNITED STATES,

Appellee,

v.

JOHN ANALETTO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Gary G. Pelletier, with whom Pelletier Clarke & Caley, LLC,
was on brief, for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

December 9, 2015

**BARRON**, **Circuit Judge**.  In this appeal, John Analetto brings three challenges to his conviction, under 18 U.S.C. § 894, for knowingly participating in the use of extortionate means to collect or attempt to collect an extension of credit.  We reject each one of Analetto's challenges and affirm the conviction.

**I.**

After a jury trial, Analetto, a former Massachusetts state trooper, was convicted of using extortionate means to attempt to collect an extension of credit -- arising out of a gambling debt -- from a man named Christopher Twombly.  See 18 U.S.C. § 894 (making it a crime to "knowingly participate[] in any way, or conspire[] to do so, in the use of any extortionate means . . . to collect or attempt to collect any extension of credit").  The prosecution put on evidence to show that Analetto had made an implicit threat of violence to Twombly in a voicemail that he left on Twombly's phone on December 30, 2011.  See 18 U.S.C. § 891(7) (defining "extortionate means" as "any means which involves the use, or an express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person").

Analetto first contends that the conviction must be set aside because the District Court chose the wrong remedy for the prosecution's gender-based discrimination in the use of peremptory challenges during jury selection.  See J.E.B. v. Alabama ex rel.

T.B., 511 U.S. 127, 129 (1994) (holding that "gender, like race, is an unconstitutional proxy for juror competence and impartiality"); Batson v. Kentucky, 476 U.S. 79, 85-86 (1986) (setting out the general rule that a defendant has "the right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria").  Analetto next contends that the conviction must be reversed because the evidence at trial was insufficient to support a finding that his voicemail message conveyed an implicit threat of violence and because the government failed to put on any other evidence that could suffice to prove that he had done so.  And, finally, Analetto challenges the District Court's refusal to instruct the jury regarding whether Analetto specifically intended to cause fear in Twombly and whether Analetto was too intoxicated at the time he left the voicemail message to have had such a specific intent.

We consider Analetto's challenges in this order.

## II.

Analetto's Batson challenge targets only the remedy that the District Court used to cure the prosecution's gender-based, discriminatory use of peremptory challenges during jury selection. The District Court imposed a remedy following an objection that Analetto lodged after the prosecution attempted to use its eighth peremptory strike against a male juror ("Juror Number 41").  That remedy was to seat Juror Number 41 and to prohibit the prosecution

- 3 -

from further exercising peremptory strikes against male jurors. Analetto contends that remedy was too limited.

The key premise on which Analetto's challenge rests is that the District Court found the prosecution had violated Batson not only in exercising a peremptory strike against Juror Number 41, but also in using peremptory strikes against seven other male jurors earlier in the selection proceedings. From that premise, Analetto contends that the District Court was required to cure the Batson violation that it found either by seating all eight male jurors that the prosecution had peremptorily struck or by redoing jury selection with an entirely new venire.[1]

A review of the record shows, however, that Analetto's challenge to the District Court's Batson remedy rests on a mistaken premise. The District Court's finding of discrimination related only to the prosecution's use of a peremptory challenge against Juror Number 41 and not to the prosecution's use of peremptory challenges against the seven other male jurors that the prosecution had struck earlier.

The record makes that more limited scope of the District Court's Batson finding quite clear. The District Court announced

---

[1] Analetto mistakenly states in his brief that the prosecution had seven peremptory challenges; that understanding led Analetto to advocate in his brief for "the seating of the remaining six afflicted jurors" when he clearly intended to refer to all challenged male jurors.

that it was imposing a remedy only in response to the objection by defense counsel to the prosecution's attempt to peremptorily strike Juror Number 41, who was a male. In finding that strike impermissibly gender-based, the District Court stated: "The objection is sustained. . . . [E]very government strike has been a male, and I think that -- I'm not persuaded by the explanation. . . . I won't allow you to strike him."

The "explanation" to which the District Court referred was the one that the prosecutor gave in her attempt to justify the challenge of Juror Number 41. The prosecutor offered that explanation after defense counsel had argued that Juror Number 41 in particular was unworthy of the strike, because "[o]f all jurors, this guy has to be the one who's worn all the hats, who's got to be the most fair and impartial of all of them . . . ."[2] The prosecutor responded that the prosecution took "a different view of the impression that [the juror] gave at sidebar" and that she was "concerned that [the juror] has had experience . . . in the court system."

Thus, in rejecting the prosecutor's explanation for striking the juror, the District Court found only that the prosecution had failed to explain how its decision to strike Juror Number 41 in particular was based on anything other than that

---

[2] Juror Number 41 had previously indicated that he had worked as both a prosecutor and a defense lawyer.

juror's gender.  No broader finding of gender-based discrimination in the prosecution's use of other strikes was made.

In lodging the <u>Batson</u> challenge to the prosecution's attempt to strike Juror Number 41, Analetto's counsel did refer to the prosecution's prior striking of seven male jurors.  But, in context, that reference to the prosecution's prior conduct is reasonably understood, not as a <u>Batson</u> challenge to each of the prosecution's seven prior strikes of male jurors, but only as support for the contention that gender discrimination explained the prosecution's eighth strike given the prosecution's lack of any other reasonable explanation for it.  <u>See</u> <u>Sanchez</u> v. <u>Roden</u>, 753 F.3d 279, 302 (1st Cir. 2014) ("[D]emonstrating a pattern of strikes against members of a cognizable group may raise an inference of discrimination against a particular juror.").  Thus, one cannot infer from the nature of Analetto's counsel's objection to the striking of Juror Number 41 that the District Court, in ruling in defense counsel's favor, must have been making the more sweeping finding of gender-based discrimination that Analetto contends it made.[3]

---

[3] Nor had Analetto's counsel objected earlier to any of the prosecution's previous seven strikes of male jurors.  His only relevant prior comment came after the prosecution exercised its seventh peremptory challenge against a male juror.  Analetto's counsel then asked how many challenges the prosecution had left because he "want[ed] to know how many more men [he] should [] knock off."  But that comment alone cannot transform the later objection

Consistent with the conclusion that the District Court made a narrowly tailored finding of discrimination in response to a narrowly tailored objection, Analetto never raised any further objection or asked for clarification after the District Court sustained the objection and announced its limited remedy. Rather, when faced with a remedy that did not purport to address the striking of the seven other male jurors, defense counsel affirmatively stated he was content with the jury.[4]

The District Court did, in addition to requiring the seating of Juror Number 41, impose a partially prospective remedy. That aspect of the remedy banned the prosecution from striking any male jurors in the future while seating the eighth juror. But the forward-looking part of the District Court's remedy does not itself suffice to show that the District Court must have implicitly found that the seven previously challenged male jurors also had been struck in violation of Batson. In fact, the District Court at no point asked the government for an explanation of why it had struck any of those seven jurors. We therefore decline to presume that the District Court made a sweeping, but utterly unsupported,

_____

to the exercise of a peremptory challenge against Juror Number 41 into a contention that the prosecution violated Batson in exercising the seven other peremptory challenges against male jurors.

[4] The government contends we must review the Batson ruling for plain error, but Analetto's Batson challenge would fail under even the de novo standard he asks us to apply.

- 7 -

finding of discrimination as to the other seven challenged male jurors when the record supports a far more reasonable conclusion: the District Court found discrimination only in connection with the striking of Juror Number 41.

Because the District Court found discrimination only with respect to the government's attempt to strike Juror Number 41, the District Court's chosen remedy -- "disallow[ing] the discriminatory challenge[] and resum[ing] selection with the improperly challenged jurors reinstated on the venire," while also barring the government from challenging another male -- cannot be said to have been inadequate under Batson. See Batson, 476 U.S. at 99 n.24.[5] We thus reject Analetto's Batson-based challenge to his conviction.

### III.

Analetto also challenges the District Court's denial of his Rule 29 motion for acquittal based on insufficiency of evidence. He contends the District Court erred in denying the motion because the evidence at trial did not support the government's theory that he made an implicit threat of violence within the meaning of 18 U.S.C. § 891(7).

---

[5] We express no view as to the propriety of the District Court's prohibiting the prosecution from challenging male jurors going forward.

Under the statute, the government must show that there was evidence from which a rational jury could find that Analetto made an "implicit threat . . . of violence or other criminal means to cause harm to the person, reputation, or property" of Twombly. See 18 U.S.C. § 891(7). "It is the nature of the actions of the person seeking to collect the indebtedness, not the mental state produced in the debtor, that is the focus of the inquiry for the jury." United States v. Oreto, 37 F.3d 739, 752 (1st Cir. 1994) (quoting United States v. Polizzi, 801 F.2d 1543, 1548 (9th Cir. 1986)). But actual fear on the part of the debtor in response to the alleged implicit threat "may be pertinent evidence." Id.

Our review of the District Court's denial of the motion is de novo. United States v. Troy, 583 F.3d 20, 24 (1st Cir. 2009). We examine the evidence in the light most favorable to the verdict and ask whether a rational factfinder could find guilt beyond a reasonable doubt. Id. "To sustain a conviction, the court need not conclude that only a guilty verdict appropriately could be reached; it is enough that the finding of guilt draws its essence from a plausible reading of the record." United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993).

In this case, the implicit threat that underlies the conviction is contained in the voicemail message that Analetto left on Twombly's phone in connection with an attempt to collect

an illegal gambling debt.  The record transcript of the voicemail reads as follows:

> Hi, Chris.  Happy New Year.  We're calling to see if we can recoup some of our investment.  You owe 38, we'll round it to four, with interest.  We'd appreciate it if you contact the right people and start doing the right thing or, you know, 2012 isn't going to be too good for you.  So Happy New Year to you and your Mom and your Dad and your family, and we appreciate your consideration.  Make the call.  We hope to hear from you by the first of 2012.  Capice?  Bye.

Analetto correctly points out that nowhere in that voicemail did Analetto expressly "threaten to kill, maim, stab, punch, or inflict any physical harm upon Mr. Twombly."  But the evidence (when considered in the light most favorable to the verdict) established that prior to leaving that message Analetto urged another man to threaten Twombly and that Analetto volunteered to make a threatening call himself.  And the evidence at trial further showed (when, again, considered in the light most favorable to the verdict) the voicemail that Analetto did leave induced fear in its recipient, Twombly.  Thus, the evidence was sufficient, especially given that the call was made in an attempt to collect an illegal gambling debt, to support the finding that Analetto knowingly conveyed an implicit threat of violence to Twombly, as "the finding of guilt draws its essence from a plausible reading of the record."  See id.

Specifically, the evidence at trial showed the following.

- 10 -

In leaving the message, Analetto was acting on behalf of Robert Russo, a friend who ran an illegal gambling business. Analetto had lent money to Russo to help keep his gambling business afloat, and Analetto had grown increasingly frustrated with Russo's inability to collect from debtors such as Twombly (and thus Russo's resulting inability to pay back Analetto).

Significantly, in a December 30, 2011 conversation between Analetto and Russo, Analetto urged Russo to confront Twombly in person about the debt. Analetto encouraged Russo to dress completely in black and "[g]o to [Twombly's] house and slash all the tires on his car." And Analetto went on in that conversation to suggest that Russo threaten to "stick a fucking broomstick up [Twombly's] mother's cunt." Indeed, when Russo expressed doubt about threatening Twombly's mother, Analetto continued: "I'll make the call, and I'll say, 'Listen, the tires were first; now we're going to fuck with your mother's house. When a bullet comes through your mother's window' . . . ."

Following this conversation, Analetto then asked for Twombly's number and made the call. Immediately after making the call, moreover, Analetto was informed that Twombly's father was in fact deceased. Analetto responded to that information as follows: "I don't give a fuck his father's dead, his fucking mother's dead. I don't give a fuck. That has to be done. At minimum, he's thinking now."

Thus, the fact that the precise words Analetto used in his voicemail message did not overtly refer to any particular violent means that would be used if Twombly did not pay the debt is not dispositive of whether the trial evidence supported a finding that Analetto knowingly conveyed an implicit threat of violence. The words Analetto used in the voicemail message in his attempt to collect the illegal debt were certainly ominous ones. And, when the voicemail message is considered in conjunction with the evidence about Analetto's stated intent in making the call, a jury could certainly infer that Analetto intended to convey an implicit threat of violence to Twombly.

Moreover, Twombly testified that the voicemail message that Analetto left "obviously scared the heck out of" him. In particular, Twombly testified that the fact that the caller (whom he did not recognize) had explicitly mentioned his family was especially scary. Twombly further testified that he viewed as threatening Analetto's comment that 2012 would not be "too good for" him if he did not pay. And while "[t]he debtor's subjective fear" is not itself an element of the offense under 18 U.S.C. § 894, the recipient's "actual fear may be pertinent evidence" that bears on whether the defendant was knowingly conveying a violent threat. Oreto, 37 F.3d at 752. Thus, the evidence of how Twombly understood the voicemail message reinforces the reasonableness of the jury's finding that Analetto knowingly conveyed an implicit

- 12 -

threat of violence to Twombly through the voicemail message. Accordingly, we affirm the District Court's rejection of Analetto's Rule 29 motion.

## IV.

Analetto's final challenge concerns the instructions that the District Court gave the jury. Analetto contends that they were fatally incomplete. Specifically, he argues that the District Court committed reversible error by not including two instructions that Analetto requested. The first was that Analetto could not be found guilty unless the jury found that he had the specific intent to cause fear in Twombly when leaving the voicemail.[6] The second was that "intoxication may prevent a person from having knowledge of their actions or the intent necessary to cause fear" -- in other words, that intoxication can negate "specific intent."[7]

---

[6] The full text of that requested instruction follows:

A defendant knowingly participates in use of extortionate means when he intends by his conduct to install fear of harm in the debtor. Acts or statements are a threat if they would reasonably induce fear of harm in an ordinary person. A simple demand for money is not a threat. Fear, however, must be the intended result of the defendant's actions and he must make the threat knowing and intending it to cause fear in the mind of the recipient.

[7] Evidence had been introduced at trial that tended to prove that Analetto was drinking Scotch whiskey throughout his meeting with Russo on December 30, 2011.

- 13 -

When considering preserved challenges to jury instructions that involve "the interpretation of the elements of a statutory offense," our review is de novo. United States v. Pitrone, 115 F.3d 1, 4 (1st Cir. 1997). But when such a challenge is unpreserved, we review only for plain error. United States v. Pennue, 770 F.3d 985, 989 (1st Cir. 2014). And the government contends here that because Analetto registered no post-charge objection, we should apply plain-error review. See United States v. Meadows, 571 F.3d 131, 146 (1st Cir. 2009) (internal citations and quotation marks omitted); United States v. Combs, 555 F.3d 60, 62-63 (1st Cir. 2009) (applying this standard in a case where defendant had submitted a requested instruction but then did not object to its exclusion after being invited to do so by the trial judge).

Analetto contends otherwise without addressing this contrary precedent. But his challenge fails under even his preferred standard, because any error in denying his requested instructions was harmless. See Neder v. United States, 527 U.S. 1, 9-10 (1999) (applying harmless-error review to a defendant's claim that a jury instruction omitted an element of the charged offense).

To support his challenge to the refusal to give the instruction regarding "specific intent to cause fear," Analetto urges us to conclude from statements in two Second Circuit

- 14 -

decisions that a defendant cannot be convicted under § 894 unless he specifically intended to put his victim in fear. In particular, he relies on United States v. Sears, 544 F.2d 585, 587–88 (2d Cir. 1976), which stated in describing § 894 that "[f]ear must be the intended result of the defendant's act," (citations, internal quotation marks, and alterations omitted), and United States v. Lombardozzi, 491 F.3d 61, 70–71 (2d Cir. 2007), which stated that, under § 894, "[t]he government had to establish that, in collecting the loans, [the defendant] intended, as the result of his actions, to cause [the victim] to fear he would suffer harm to his person, reputation, or property."

We need not decide whether Analetto is right to read this out-of-circuit precedent as he does, let alone whether we would adopt that view as the law of our circuit. And that is because, on the facts of this case and in the context of the instructions that the District Court did give, it is simply not plausible that Analetto "knowingly" made an implicit threat of violence to Twombly without also specifically intending to cause fear by doing so.

A threat of violence typically induces fear. Analetto called Twombly without any basis on which to believe Twombly's reaction to a threat of violence would be anything other than typical. In fact, the evidence at trial showed that Analetto and Twombly had no prior relationship of any kind before Analetto

called him on December 30, 2011.  And so there was no evidence to suggest that Analetto's threat -- if knowingly made, as the jury found in convicting -- was not aimed at causing the typical fear-inducing result.

Thus, there is no basis for concluding that Analetto was prejudiced by the District Court's refusal to give the requested instruction, even assuming that § 894 requires proof of a defendant's specific intent to cause fear.  Moreover, Analetto has not demonstrated -- or even attempted to demonstrate -- how or why the omission of the requested instruction concerning a specific intent to cause fear was in fact prejudicial in this case.  In consequence, we reject Analetto's challenge.

Analetto further argues that the District Court should have instructed the jury that voluntary intoxication can negate a specific intent element of a crime.  See United States v. Burns, 15 F.3d 211, 218 (1st Cir. 1994); United States v. Sewell, 252 F.3d 647, 650 (2d Cir. 2001).  The District Court declined to give an instruction on intoxication on the basis of its conclusion that § 894 was "not a specific intent crime."  But even assuming that the "specific intent to cause fear" is an element of the crime proscribed by § 894, Analetto also cannot show prejudice from the omission of an instruction about intoxication.

The evidence of Analetto's intoxication, which the District Court allowed, included testimony that Analetto was

drinking Scotch whiskey during the meeting with Russo on December 30 that led to Analetto's call to Twombly. The recording of the meeting provides no support for concluding that Analetto, as a result of intoxication or otherwise, displayed confusion as to who Twombly was or whether he had a previous relationship with him. At all times, Analetto displayed a clear focus on pursuing Twombly's debt to Russo. Indeed, Analetto even noted that he was calling Russo on an "untraceable Walmart phone," indicating that Analetto explicitly recognized that Twombly would not know who had left the voicemail message. As a result, the trial evidence provides no basis from which we could conclude that the jury would have found that Analetto's intoxication led him to believe that a threat of violence would not have the predictable result of causing fear in Twombly.[8] We thus conclude that even on the doubtful assumption that the District Court erred in omitting an instruction on intoxication, that error was harmless.

## V.

For the reasons set forth above, we **<u>affirm</u>** Analetto's conviction.

---

[8] We note that Analetto does not argue that an intoxication instruction would have been relevant to the jury's determination whether Analetto knowingly made a threat of violence to Twombly.